No. 2013-1495

IN THE

# UNITED STATES COURT OF APPEALS

### FOR THE FEDERAL CIRCUIT

MAXIM INTEGRATED PRODUCTS, INC.,

Plaintiff-Appellee,

v.

BRANCH BANKING AND TRUST COMPANY,

Defendant-Appellant.

**Appeal from the United States District Court for the
Eastern District of Texas in case no. 12-CV-0369,
Judge Richard A. Schell.**

**BRIEF OF APPELLANT BRANCH BANKING AND TRUST COMPANY**

Douglas H. Hallward-Driemeier
James R. Myers
Henry Huang
ROPES & GRAY LLP
One Metro Center
700 12th St., NW, Suite 900
Washington, DC 20005
Telephone: (202) 508-4600
Facsimile: (202) 508-4650

*Attorneys for Appellant Branch
Banking and Trust Company*

September 3, 2013

Form 9

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MAXIM INTEGRATED PRODUCTS, INC., v. BRANCH BANKING AND TRUST COMPANY

No. 13-1495

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Branch Banking and Trust Co. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Branch Banking and Trust Co.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not Applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

BB&T Corporation.

4. ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

See Addendum

7-19-13
Date

Signature of counsel

Douglas Hallward-Driemeier
Printed name of counsel

Please Note: All questions must be answered
cc:   Philip William Marsh

124

i

## ADDENDUM TO BRANCH BANKING AND TRUST CO.
## CERTIFICATE OF INTEREST

The names of all law firms and the partners or associates that appeared for the appellant now represented by me in the trial court or are expected to appear in this court are:

Douglas Hallward-Driemeier
James R. Myers
Henry Y. Huang
Mariel P. Goetz
Ropes & Gray LLP
700 12th Street, NW
Suite 900
Washington, DC 20005

William Ellsworth Davis, III
The Davis Firm, PC-Longview
111 West Tyler Street
Longview, TX 75601

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ................................................................. vii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUE.................................................................. 1

STATEMENT OF THE CASE.................................................................. 2

STATEMENT OF THE FACTS ................................................................ 4

    A.    Contending That It Has A Patent Monopoly On Mobile Banking, Maxim Asserts Infringement By BB&T And Numerous Others.................................................................. 4

    B.    The Parties Agree To Dismiss The Texas Action "With Prejudice" ............................................................................. 6

    C.    BB&T Asserts Its *Res Judicata* Defense In The MDL Proceedings ......................................................................... 9

    D.    Maxim Belatedly Seeks To Modify The Prejudicial Effect Of The "With Prejudice" Dismissal In Texas ............................ 9

    E.    The Texas Court Grants Maxim's Rule 60 Motion ............................ 14

SUMMARY OF ARGUMENT ................................................................ 15

ARGUMENT ......................................................................................... 19

I.    STANDARD OF REVIEW ............................................................ 19

II.    AS A MATTER OF LAW, RULE 60(A) DID NOT AUTHORIZE THE DISTRICT COURT TO CHANGE THE PREJUDICIAL EFFECT OF THE JUDGMENT ................................................... 20

    A.    The Amended Judgment Did Not Correct A "Clerical Mistake" Or "Mistake Arising From Oversight Or Omission" As Required By Rule 60(a)....................................................... 22

    B.    The Amended Judgment Is Not Consistent With The Court's Intent At The Time The Original Judgment Was Entered ................. 31

    C.    The Amended Judgment Affected The Parties' Substantive Rights.................................................................................. 34

III.    THE COURT'S AMENDED ORDER IS AN IMPROPER ATTEMPT TO CIRCUMVENT THE LIMITS OF RULES 59(E) AND 60(B)(1)....................................................................... 36

CONCLUSION .................................................................................... 41

# TABLE OF AUTHORITIES

CASES

*Allied Materials Corp. v. Superior Prods. Co.*,
  620 F.2d 224 (10th Cir. 1980) ........................................................... 23

*Bowen Inv., Inc. v. Carneiro Donuts, Inc.*,
  490 F.3d 27 (1st Cir. 2007) ............................................................... 25

*Britt v. Whitmire*,
  956 F.2d 509 (5th Cir. 1992) ............................................................. 30

*Burton v. Johnson*,
  975 F.2d 690 (10th Cir. 1992) ..................................................... 21, 34

*Cashner v. Freedom Stores, Inc.*,
  98 F.3d 572 (10th Cir. 1996) ............................................................. 37

*Century Mfg. Co., Inc. v. Cent. Transp. Int'l, Inc.*,
  209 F.R.D. 647 (D. Mass. 2002) ........................................................ 33

*Chavez v. Balesh*,
  704 F.2d 774 (5th Cir. 1983) ............................................................. 23

*CNF Constructors, Inc. v. Donahoe Constr. Co.*,
  57 F.3d 395 (4th Cir. 1995) ............................................................... 36

*Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*,
  311 F.3d 1031 (10th Cir. 2002) ......................................................... 33

*Dura-Wood Treating Co. v. Century Forest Indus.*,
  694 F.2d 112 (5th Cir. 1982) ........................................................ 23, 32

*In re Galiardi*,
  745 F.2d 335 (5th Cir. 1984) ............................................................. 36

*Hesling v. CSX Transp., Inc.*,
  396 F.3d 632 (5th Cir. 2005) ............................................................. 20

*Hodge ex rel. Skiff v. Hodge*,
  269 F.3d 155 (2d Cir. 2001) .............................................................. 23

*Jones v. Anderson-Tully Co.*,
    722 F.2d 211 (5th Cir. 1984) ..................................................................22, 28, 37

*Larchmont Eng'g, Inc. v. Toggenburg Ski Ctr., Inc.*,
    444 F.2d 490 (2d Cir. 1971) ...............................................................................30

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
    714 F.3d 1289 (Fed. Cir. 2013) .........................................................................19

*Logan v. Burgers Ozark Country Cured Hams*,
    263 F.3d 447 (5th Cir. 2001) ..........................................................28, 31, 34, 37

*Martinez v. Johnson*,
    104 F.3d 769 (5th Cir. 1997) ..............................................................................20

*Maxus Energy Corp. v. United States*,
    31 F.3d 1135 (Fed. Cir. 1994) ...........................................................................34

*McNickle v. Bankers Life & Cas. Co.*,
    888 F.2d 678 (10th Cir. 1989) ......................................................................25, 34

*Morris v. City of Hobart*,
    39 F.3d 1105 (10th Cir. 1994) ...........................................................................30

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) ..........................................................18, 38, 39, 40

*Olle v. Henry & Wright Corp.*,
    910 F.2d 357 (6th Cir. 1990) .............................................................................37

*In re Pettle*,
    410 F.3d 189 (5th Cir. 2005) .....................................................................*passim*

*Pfizer Inc. v. Uprichard*,
    422 F.3d 124 (3d Cir. 2005).........................................................................20, 35

*Rivera v. PNS Stores, Inc.*,
    647 F.3d 188 (5th Cir. 2011) .....................................................................*passim*

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) .............................................................................36

*Schwarz v. Folloder*,
    767 F.2d 125 (5th Cir. 1985) ........................................................30, 33

*Smoot v. Fox*,
    340 F.2d 301 (6th Cir. 1964) ...............................................................32

*Warner v. Bay of St. Louis*,
    526 F.2d 1211 (5th Cir. 1976) .............................................................23

*In re West Tex. Mktg. Corp.*,
    12 F.3d 497 (5th Cir. 1994) ................................................................23

## RULES

Fed. R. Civ. P. 41(a)...............................................................................26

Fed. R. Civ. P. 41(a)(1)...........................................................................25

Fed. R. Civ. P. 41(a)(1)(A)(i) .................................................................11

Fed. R. Civ. P. 41(a)(1)(B) .....................................................................29

Fed. R. Civ. P. 41(a)(2)................................................................26, 29, 30

Fed. R. Civ. P. 60(a)................................................................10, 11, 16, 22

Fed. R. Civ. P. 60(b) ...............................................................................37

Fed. R. Civ. P. 60(b)(1)......................................................10, 11, 37

Fed. R. Civ. P. 60(b)(6)..............................................................10, 11

## STATEMENT OF RELATED CASES

There have been no appeals in this case that were previously before this or any other appellate court.

There is no case in this or any other court known to directly affect or be directly affected by this Court's decision in the instant appeal, other than *Branch Banking & Trust Co. v. Maxim Integrated Prods., Inc.*, No. 5:12-cv-353 (E.D.N.C. filed June 18, 2012), which has been consolidated in *In re Maxim Integrated Prods., Inc.*, MDL No. 2354 (W.D. Pa.).

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). On May 23, 2013, the district court entered an Order Granting Plaintiff's Motion for Clarification of the court's original July 16, 2012 order, which dismissed with prejudice the patent infringement claims of Plaintiff-Appellee Maxim Integrated Products, Inc. ("Maxim"). On the same day, the district court entered an Amended Order of Dismissal, which dismissed Maxim's claims without prejudice. These orders are final orders that dispose of all parties' claims in that action.

Defendant-Appellant Branch Banking and Trust Company ("BB&T") timely noticed the court's May 23, 2013 orders for appeal on June 11, 2013. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295.

# STATEMENT OF THE ISSUE

Whether Federal Rule of Civil Procedure 60(a), which allows the district court to amend a judgment to correct clerical errors, authorized the district court to convert its order dismissing Maxim's claims "with prejudice" into a dismissal "without prejudice," where: (a) the parties had agreed to the language of the proposed order of dismissal with prejudice; (b) Maxim conceded that it had sought a dismissal with preclusive effect but (mistakenly) believed the dismissal would only preclude further litigation in Texas; (c) the district court's modification was

based on its post-hoc analysis of what type of dismissal the parties should have sought; (d) the amendment altered the parties' substantive rights by depriving BB&T of its *res judicata* defense against other claims brought by Maxim; and (e) construing Rule 60(a) to permit the amendment would allow Maxim and the district court to avoid limits on the scope of Rule 60(b), which prohibits amendment in these circumstances.

## STATEMENT OF THE CASE

On June 18, 2012, BB&T filed suit against Maxim in the Eastern District of North Carolina seeking declaratory judgments of non-infringement and invalidity of U.S. Patent Nos. 5,940,510, 5,949,880, 6,105,013, and 6,237,095. *Branch Banking & Trust Co. v. Maxim Integrated Prods., Inc.*, No. 5:12-cv-353 (E.D.N.C. filed June 18, 2012) (the "North Carolina action"). The next day, Maxim filed a mirror-image action, asserting the same four patents, in the Eastern District of Texas ("Texas Court"), from which this appeal arises (the "Texas action"). On July 11, 2012, Maxim also filed identical claims of patent infringement as counterclaims in the North Carolina action.

By June 2012, Maxim was already party to seventeen other lawsuits, which were consolidated by the Judicial Panel on Multidistrict Litigation ("MDL Panel") in the Western District of Pennsylvania ("Pennsylvania Court"). *In re Maxim Integrated Prods., Inc.*, MDL No. 2354 (W.D. Pa.). On June 22, the MDL Panel

2

issued a Conditional Transfer Order to transfer both the North Carolina and Texas actions to the Pennsylvania Court to be consolidated with the other pending lawsuits. On June 29, BB&T filed a Notice of Opposition with the MDL Panel opposing transfer of the Texas action.

On July 6, 2012, Maxim offered to dismiss the Texas action with prejudice in exchange for certain conditions; BB&T agreed to Maxim's proposal on July 9. On July 11, Maxim filed a Notice of Dismissal with the Texas Court, together with a Proposed Order that stated, in language agreed upon by the parties, that "[a]ll claims asserted by Plaintiff against Defendant [BB&T] are hereby dismissed *with prejudice*." A121-22 ("Notice"), A124 ("Proposed Order") (emphasis added). On July 16, the Texas Court adopted Maxim's Proposed Order ("July 16 Order") and entered judgment dismissing the case with prejudice. A24.01.

Two months later, on September 10, 2012, after the time for seeking amendment of the judgment under Rule 59(e) had passed, Maxim filed a Motion and Memorandum for Clarification, Correction, Reconsideration, and/or Relief Under Rule 60 with Respect to the Order Dismissing Action (Maxim's "Motion" or "Rule 60 Motion"). A25. Through that Motion, Maxim asked the Texas Court to modify the July 16 Order to state that the dismissal was with prejudice only to Maxim's ability to "re-assert those claims in [the Texas] Court" but "without prejudice to [Maxim's MDL] counterclaims" in the North Carolina action. *Id.*,

3

A34.01[1] ("Proposed Rule 60 Order").  Briefing of the Motion was complete on October 2, 2012.  In the meantime, BB&T sought and obtained a stay of all proceedings as to BB&T in the Pennsylvania Court pending the Texas Court's resolution of Maxim's Motion.

On May 23, 2013, the Texas Court granted Maxim's Motion.  Order Granting Plaintiff's Motion for Clarification ("May 23 Order").  A1.  The same day, the Texas Court entered an Amended Order of Dismissal ("Amended Order") modifying its July 16 Order to state that Maxim's claims were dismissed "without prejudice."  A6.  BB&T timely appealed from the district court's Amended Order.

## STATEMENT OF THE FACTS

### A.    Contending That It Has A Patent Monopoly On Mobile Banking, Maxim Asserts Infringement By BB&T And Numerous Others

This case arises out of a campaign Maxim has waged against BB&T and over twenty-five other financial and retail services companies on the premise that essentially all mobile banking software infringes Maxim's patents.  That campaign began in 2011, when Maxim asserted, or threatened to assert, patent infringement claims against dozens of financial companies across the country.  BB&T was one of those companies.  In June 2012, after receiving threat letters from Maxim, and believing Maxim's claims to be baseless, BB&T filed a declaratory judgment action against Maxim in the Eastern District of North Carolina, seeking, among

---

[1] This document can be found immediately after page A34 of the Joint Appendix.

4

other relief, a declaration that certain of Maxim's patents were invalid. *Branch Banking & Trust Co. v. Maxim Integrated Prods., Inc.*, No 5:12-cv-353 (E.D.N.C. filed June 18, 2012). The next day, Maxim filed a wholly duplicative patent infringement action against BB&T in the Eastern District of Texas. *Maxim Integrated Prods., Inc. v. Branch Banking & Trust Co.*, No. 4:12-cv-00369-RAS (E.D. Tex. filed June 19, 2012).

By the time BB&T sought declaratory relief, Maxim had already sued numerous other financial services companies, and those lawsuits were consolidated into a single multi-district litigation (MDL) in the Western District of Pennsylvania. *In re Maxim Integrated Prods., Inc.*, MDL No. 2354 (W.D. Pa.). On June 22, 2012, the Judicial Panel on Multidistrict Litigation conditionally ordered both the North Carolina action and the Texas action transferred to the MDL jurisdiction to be consolidated with the other pending lawsuits. *See* A101-02, A108-09. BB&T did not oppose the transfer of the North Carolina action, but did object to the transfer of the Texas action, which BB&T believed was an improper second-filed action completely duplicative of the North Carolina action. Accordingly, on June 29, 2012, BB&T notified the MDL Panel that it intended to oppose transfer of the Texas action. A108-09.

On July 5, 2012, the Pennsylvania Court scheduled a July 17 conference in the multidistrict litigation, which at that time already included sixteen other

5

consolidated lawsuits. *See id.* Due to the briefing schedule for BB&T's transfer opposition, BB&T's opposition would not have been resolved by the July 17 conference date. Maxim became concerned that BB&T's transfer opposition could slow the progress of Maxim's large-scale litigation attack on the nation's most important financial services companies. *See id.*

### B.    The Parties Agree To Dismiss The Texas Action "With Prejudice"

On July 6, 2012, Maxim approached BB&T to propose a compromise that would clear the way for Maxim to proceed with the scheduling conference and the MDL unburdened by the complication posed by BB&T's transfer opposition. Under Maxim's proposal, which Maxim communicated to BB&T by phone on July 6, Maxim offered to dismiss the Texas action *with prejudice.* A102-03. In exchange, BB&T would have to agree to three things: (1) to withdraw its Notice of Opposition to the Conditional Transfer Order, (2) to not object to transferring the North Carolina action to the MDL, and (3) to hold an in-person meeting between the parties' representatives. *Id.* Maxim confirmed these conditions in e-mail correspondence that same day. A103, A112-14.

On July 9, BB&T agreed to Maxim's proposal in a written communication that stated expressly that, as part of the agreement, Maxim would move to dismiss the Texas action *with prejudice* ("the July 9 agreement" or "agreement"). *See id.*; A103, A112-14 (noting that Maxim was to "file the motion to dismiss *with*

6

*prejudice* the E.D. Texas case, as [Maxim's counsel] proposed on Friday") (emphasis added). Over the following days, the parties repeatedly confirmed in e-mail correspondence that Maxim would dismiss all of its claims *with prejudice*. On July 11 alone, the parties exchanged no fewer than four e-mail messages stating that the dismissal would be "with prejudice." *See* A104-05, A116-17, A127-29.

Following the parties' agreement, Maxim's counsel drafted court papers seeking the dismissal "with prejudice," including a Notice of Voluntary Dismissal ("Notice of Dismissal") and Proposed Order, and sent drafts to BB&T's counsel for his review and agreement before the documents were filed. *See* A104; A121-24. Both documents stated explicitly that the dismissal would be "with prejudice." A121; A124.[2] BB&T responded by e-mail that same day, noting BB&T was "in agreement with the proposed Order for dismissal *with prejudice* of the Texas action." A116 (emphasis added); *see also* A104. Accordingly, on July 11, 2012, Maxim filed the Notice of Dismissal and Proposed Order seeking dismissal of the Texas action "with prejudice." A41-44.

_____

[2] Specifically, the Notice of Dismissal stated that Maxim "voluntarily dismisses this action with prejudice in favor of its counterclaims filed today in *Branch Banking and Trust Company v. Maxim Integrated Products, Inc.*, Case No. 2:12-cv-00945-NBF (W.D. Pa.)." A121. The Proposed Order stated: "Having considered Plaintiff Maxim Integrated Products, Inc.'s ("Plaintiff") Notice of Voluntary Dismissal the Court finds good cause exists for granting the notice. The Notice of Voluntary Dismissal is GRANTED. All claims asserted by Plaintiff against Defendant Branch Banking and Trust Company are hereby dismissed with prejudice. Each party will bear its own costs and attorneys' fees." A124.

On July 16, the Texas Court entered Maxim's Proposed Order exactly as written, dismissing the case "with prejudice."  The order stated:

> All claims asserted by Plaintiff against Defendant Branch Banking and Trust Company are hereby dismissed with prejudice.  Each party will bear its own costs and attorneys' fees.

A34.01 ("July 16 Order" or "Order").  The corresponding docket entry stated in its entirety: "ORDER DISMISSING CASE – GRANTING [ECF No.] 8 Notice of Voluntary Dismissal.  All claims asserted by plaintiff against defendant [BB&T] are hereby DISMISSED WITH PREJUDICE."  A10 (ECF No. 9).[3]

After Maxim filed the agreed-upon documents seeking dismissal with prejudice of the Texas action, BB&T carried out its part of the bargain.  First, BB&T immediately withdrew its opposition to transfer of the Texas action, noting that "counsel for Maxim Integrated Products, Inc. ('Maxim') offered to dismiss *with prejudice* the Texas action if BB&T would withdraw its Opposition" and that Maxim had duly filed the Notice and Proposed Order dismissing "all claims" of the Texas action "*with prejudice*."  *See* A133 (emphases added).  Second, BB&T did not object to transferring the North Carolina action.  Third, BB&T invited Maxim's representatives to an in-person meeting in Raleigh, North Carolina,

---

[3] All references herein to ECF numbers are to the Texas action unless otherwise specified.

which took place on July 18, 2012 – completing both parties' performance of their respective obligations under the July 9 agreement.  A105-06.[4]

### C.    BB&T Asserts Its *Res Judicata* Defense In The MDL Proceedings

On August 6, 2012, BB&T filed its Answer to Maxim's counterclaims in the North Carolina action, which had become part of the MDL proceedings in the Western District of Pennsylvania.  *See* A62.  In its Answer, BB&T asserted that Maxim's counterclaims were barred under the doctrine of *res judicata* because "Maxim's Counterclaims arise out of the same transactions or occurrences between the same parties as claims that were previously asserted in another lawsuit that is the subject of a final judgment dismissing the claims with prejudice."  A68.

### D.    Maxim Belatedly Seeks To Modify The Prejudicial Effect Of The "With Prejudice" Dismissal In Texas

Although Maxim could have asked the Texas Court to amend the judgment under the permissive standard of Rule 59(e), it failed to do so.  Because the order of dismissal with prejudice was entered on July 16, 2012, Maxim could have filed a motion to amend under Rule 59(e) until August 13.  Thus, Maxim had a week

---

[4] Following that meeting, BB&T continued to engage in good-faith negotiations with Maxim.  *See* A142.  Maxim never raised the possibility of dismissing the Texas action *without* prejudice or imposed any other conditions on BB&T prior to dismissal.  *See* A105-06.  BB&T never agreed that the patent infringement claims Maxim was to assert as counterclaims in the North Carolina action would be procedurally or substantively proper once the Texas action had been dismissed with prejudice.  A102-03.  Rather, BB&T agreed only that "all future motions will be made in the EDNC action which is subject to the MDL transfer order to the WDPA."  A104, A116-18.

9

after learning of BB&T's *res judicata* defense on August 6 to seek relief under the more liberal standards of Rule 59(e).  Maxim never did.

Instead, on September 10, 2012, nearly two full months after the final entry of the July 16 dismissal order, Maxim filed a motion in the Texas Court, seeking "clarification, correction, reconsideration and/or relief under Rule 60" with respect to the final dismissal order.  Maxim argued that it had not understood that the "with prejudice" dismissal in Texas would have "any preclusive effect on claims filed in *another venue*" – such as, for example, its MDL counterclaims against BB&T.  A27 (emphasis added).  Maxim asked the Texas Court to issue an amended order that would preclude Maxim only from relitigating those claims in the Texas Court.  A34.01 (Proposed Rule 60 Order).  Although Maxim's own counsel had proposed the dismissal "with prejudice," confirmed the "with prejudice" nature of that dismissal in writing numerous times, drafted the court papers explicitly seeking the dismissal "with prejudice," and stood by while the time to seek relief from the "with prejudice" dismissal under Rule 59(e) passed, Maxim now requested relief from the "with prejudice" scope of the July 16 Order.  Maxim invoked three subparts of Federal Rule of Civil Procedure 60: Rule 60(a), which allows correction of "clerical mistake[s]," Rule 60(b)(1), which authorizes relief from the judgment based on "mistake, inadvertence, surprise, or excusable neglect," and Rule 60(b)(6), encompassing "any other reason that justifies relief."

Fed. R. Civ. P. 60(a), (b)(1), (b)(6); A28-32.  Maxim asked the Texas Court to modify the judgment such that the dismissal would forbid Maxim to "re-assert those claims in *this* [*i.e.*, *the Texas*] Court," but would not have preclusive effect in the MDL venue.  A34.01 (Proposed Rule 60 Order) (emphasis added).

BB&T opposed Maxim's motion on the ground that it represented a belated attempt to un-do the agreement Maxim had reached with BB&T in July and under which both parties had fully performed their obligations.  A84-85.  BB&T made clear that it did not share Maxim's newly proffered understanding of what "with prejudice" meant.  *See* A102-06.  Indeed, the dismissal "with prejudice" was critical to the agreement.  *See id.*  Of course, Maxim could have dismissed the Texas action *without prejudice* without even consulting BB&T, because BB&T had not answered or otherwise responded in the Texas action.  *See* Fed. R. Civ. P. 41(a)(1)(A)(i).  Rather than simply dismiss the suit by unilateral notice, Maxim negotiated an agreement with BB&T under which Maxim would file documents agreed to by both parties seeking a court-ordered dismissal with prejudice.  A102-04.  In exchange, Maxim obtained assurance that BB&T would withdraw its opposition to transfer, and the July 17 scheduling conference in the MDL action involving twenty-five other infringement defendants could proceed without any possible delay caused by BB&T's transfer objection.  BB&T's opposition noted that Maxim's counsel apparently misunderstood the legal effect of a dismissal

"with prejudice," but that fact did not provide a basis for Maxim unilaterally to revise the dismissal to one "without prejudice." *See* A85, A92-97.

BB&T further observed that, because the district court's order adopted wholesale the language in Maxim's own Proposed Order to which the parties had agreed, Maxim could not claim any sort of clerical mistake or "oversight or omission" on the part of the Court that might be correctable under Rule 60(a). A88-92. BB&T further noted that, under binding Fifth Circuit precedent, Maxim's counsel's failure to appreciate the preclusive effect of a "with prejudice" dismissal in the Texas action on its identical claims in the North Carolina action was not a ground on which relief could be provided under Rule 60(b)(1) or (6). A92-98 (discussing *In re Pettle,* 410 F.3d 189 (5th Cir. 2005)).

In its reply papers, Maxim again confirmed that it understood that the dismissal would have some preclusive effect, but believed that effect would be limited to the Texas Court. Maxim "understood that dismissing the Texas action would have the practical effect of preventing remand for trial to this Court, and in this sense the dismissal would be prejudicial to Maxim's right to remand for a trial in this Court." A149. Maxim further suggested that, in fact, its Notice of Dismissal was the legally operative document under Rule 41(a)(1)(A)(i), and that this document's reference to "dismiss[ing] this [Texas] action [with prejudice] in favor of [its] counterclaims filed" in the North Carolina action limited the

12

preclusive effect of the dismissal. A146. Maxim acknowledged that its Proposed Order stated that "all claims asserted by Plaintiff against Defendant Branch Banking and Trust Company are hereby dismissed with prejudice," but asked the Court to vacate that order as legally irrelevant and/or to amend the Notice of Dismissal to change the "with prejudice" language to "without prejudice." A150. For the first time in its reply brief and without any support in its counsel's declarations, Maxim argued that this language was "inadvertently included" in Maxim's proposed filings. A149; *compare with* A156-57 (Suppl. Marsh Decl. ¶ 34) (nowhere stating that anything in the forms was "inadvertently included"). Maxim did not explain why its counsel had proposed submitting a Proposed Order, if that document was legally irrelevant, or why he had used the words "with prejudice" in the parties' July 6 teleconference[5]; nor did Maxim provide any legal authority that the preclusive effect of a dismissal "with prejudice" could be limited to only one jurisdiction.

In the meantime, BB&T sought and obtained a stay of all proceedings with respect to BB&T in the Pennsylvania MDL, pending the Texas Court's resolution

---

[5] *No* evidence in the record disputes that Maxim's counsel orally offered to dismiss the case "with prejudice" during the July 6 teleconference, as BB&T's counsel stated in his declaration (*see* A102). Maxim's counsel never stated that he did not offer to dismiss the case "with prejudice" in that teleconference, averring only that he had "*no recollection of agreeing*" to "dismiss [the Texas] action with prejudice." A38-39 (Marsh Decl. ¶ 19) (emphasis added); *see also* A154 (Suppl. Marsh Decl. ¶ 24).

of Maxim's Rule 60 Motion, to avoid duplication of effort in the two proceedings. A318 (Stay Motion Briefing), A363 (Order Granting Stay).

### E.    The Texas Court Grants Maxim's Rule 60 Motion

On May 23, 2013 – over eight months after Maxim filed its Motion – the district court granted Maxim's Rule 60 Motion based on what kind of dismissal the Court believed the parties should have requested in the Proposed Order.  A1 ("May 23 Order").  Relying exclusively on Rule 60(a), the district court ordered that the dismissal be converted to one "without prejudice" because "[a] dismissal with prejudice simply does not make sense."  A4; A6 ("Amended Order").  The district court gave no indication that, at the time of the July 16 Order, it had specifically intended to disregard the parties' request for a dismissal "with prejudice," by revising it to one "without prejudice."  Rather, inferring now, from the Notice of Dismissal's reference to the North Carolina counterclaims, that the parties must have intended to allow them to proceed without a *res judicata* bar, the Court believed it was "apparent that the dismissal should have been *without* prejudice." A4.  The Court did not deny that, pursuant to Rule 41(a)(1), the plaintiff may choose, and the parties may stipulate, that a voluntary dismissal will be "with prejudice."  Nonetheless, disregarding that the Court had simply adopted the form and nature of dismissal *the parties* had proposed, the Court expressed its opinion that "[n]o chain of legal reasoning could possibly lead a court to conclude that this

14

voluntary dismissal in favor of counterclaims already filed in another court should be with prejudice." *Id.*

The district court entered an Amended Order of Dismissal that same day. A6 (Amended Order).  Although the Proposed Rule 60 Order Maxim requested in connection with its Rule 60 Motion had asked that the dismissal be given preclusive effect against further filing in the Texas Court, the district court's Amended Order included no such language, but instead provided that all claims "are hereby dismissed *without prejudice*."[6] *Id.* (emphasis added).  This appeal followed.

## SUMMARY OF ARGUMENT

Rule 60(a) does not permit a district court to relieve a party of its own counsel's mistake of law, but that is precisely what the district court did here. Maxim's counsel agreed with counsel for BB&T to submit to the district court a proposed order of dismissal in a form agreed to by both parties.  That Proposed Order requested dismissal of Maxim's claims "with prejudice" and was part of a larger agreement between the parties that included withdrawal of BB&T's opposition to transfer to the MDL and BB&T's participation in settlement negotiations at Maxim's request.  BB&T fulfilled its part of this bargain, and

---

[6] On May 28, the Western District of Pennsylvania lifted the stay of all proceedings with respect to BB&T.  A300.  BB&T thus is being forced to proceed with discovery and claim construction in the MDL action during the pendency of this appeal, when those proceedings should be barred by *res judicata*.

cannot undo its past performance. The "with prejudice" language was referenced repeatedly in the parties' correspondence about the agreement. Moreover, Maxim's own filings, long after BB&T raised its *res judicata* defense, confirm that Maxim's counsel did intend for the Texas Court's dismissal to have preclusive effect, but mistakenly believed that the "with prejudice" dismissal would only preclude relitigation in the Texas Court. Maxim's counsel's erroneous understanding of the principles of *res judicata* is not a ground on which relief can be granted under Rule 60(a).

Rather, Rule 60(a) provides for a very limited type of relief, allowing a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in the judgment." Fed. R. Civ. P. 60(a). Only "mindless or mechanical" errors, such as "[c]lerical mistakes, inaccuracies of transcription, inadvertent omissions, and errors in mathematical calculation are within Rule 60(a)'s scope." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011). Here, the district court purported to correct the supposed "clerical error" of the "with prejudice" designation in the dismissal order by changing the order to state the dismissal was "without prejudice." But the parties clearly did not seek a dismissal *without* prejudice, which Maxim easily could have obtained simply by filing a notice of dismissal rather than seeking a court-ordered dismissal. In truth, the "with prejudice" dismissal was not a mistake *at all*, much less one of a clerical

16

nature: Maxim intended to seek a dismissal with prejudice (and intentionally used those words), but misunderstood the legal effect of such a dismissal. Maxim's counsel's failure to appreciate the preclusive effect of a dismissal "with prejudice" is legal error that goes well beyond the sort of "rote, typographical" mistakes Rule 60(a) may be used to correct.

Nor was there any clerical error on the part of the court, which entered Maxim's Proposed Order exactly as written. The "correction" made in the Amended Order did not merely implement the court's original intent in entering the dismissal, as Rule 60(a) requires. Instead, assessing the question months after the fact, the district court concluded that, notwithstanding the parties' agreement to dismiss the case "with prejudice," they *should* have sought a dismissal "without prejudice." Such post-hoc analysis is not a proper basis for relief under Rule 60(a).

Finally, the Amended Order impermissibly altered the parties' substantive rights. The "with prejudice" dismissal would have barred Maxim's North Carolina counterclaims asserted in the MDL. And, in fact, the MDL judge stayed the case against BB&T to avoid forcing BB&T to waste resources defending claims that had merged in the Texas judgment. As soon as the Amended Order was entered, however, BB&T was forced to resume defending the North Carolina counterclaims, at considerable cost. By eliminating BB&T's substantive defense, the Amended Order went far beyond the bounds of Rule 60(a).

17

Finally, it is significant that no other rule would have authorized converting the judgment into one "without prejudice," as the court did here. The court's unjustifiably broad application of Rule 60(a) allowed Maxim, and would allow others, to circumvent the limitations of the applicable rules. Although Maxim *could* have sought a change from "with" to "without prejudice" under Rule 59(e), which allows certain substantive alterations or amendments to a judgment immediately following its entry, Maxim allowed the applicable 28-day period to lapse before filing its motion for relief. Rule 60(b)(1), which does allow for correcting "mistakes" but only in limited circumstances, was likewise unavailing: the Fifth and Second Circuits have determined on nearly identical facts that no relief from the judgment is possible where a party knowingly requests a dismissal "with prejudice," but fails to realize the full legal effect of its actions until later. *See Pettle*, 410 F.3d at 192 (reversing grant of Rule 60(b) relief where plaintiff had not intended for his voluntary "with prejudice" dismissal to bar an ongoing state action); *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986) (reversing grant of Rule 60(b) relief based on plaintiff's counsel's "genuine misunderstanding" regarding the *res judicata* effect of plaintiff's "with prejudice" dismissal).

For good reason, Rule 60(a) is recognized as being considerably narrower in scope than either Rule 59(e) or Rule 60(b)(1), yet the district court's ruling turns this relationship on its head. Under the district court's ruling, parties who are

unable to satisfy the limitations of the more apposite rules could simply persuade a judge that the requested "with prejudice" dismissal was contrary to "logic," and obtain relief under Rule 60(a).

In sum, the parties were free to agree to seek a dismissal with or without prejudice, and could have chosen the latter.  For better or worse, Maxim chose to negotiate with BB&T and agreed to seek a dismissal "with prejudice" in exchange for certain undertakings by BB&T.  If the Texas Court's entry of a dismissal order in the precise language agreed to by the parties reflected any type of error, it was one well outside the limited scope of Rule 60(a), and the court lacked authority to address it.  This Court should reverse the district court's ruling and restore the July 16 Order.

## ARGUMENT

## I.   STANDARD OF REVIEW

In reviewing rulings under Rule 60, this Court applies the law of the relevant regional circuit (here, the Fifth Circuit) on procedural questions.  *See Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1292 (Fed. Cir. 2013) ("When reviewing a ruling under Rule 60(b), we generally defer to the law of the regional circuit in which the district court sits … because that rule is procedural in nature and not unique to patent law.").  Under Fifth Circuit law, a district court's "determination of whether it is Rule 60(a) that authorizes [a] correction [to a

judgment] – as opposed to Rule 59(e) or Rule 60(b) – is a question of law that [appeals courts] review de novo." *Rivera*, 647 F.3d at 193; *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 129 (3d Cir. 2005) (whether Rule 60(a) was properly applied "presents a question of law subject to plenary review"). If the court had authority to act pursuant to Rule 60(a), an order amending a judgment is reviewed for abuse of discretion. *See id.*; *Martinez v. Johnson*, 104 F.3d 769, 771 (5th Cir. 1997). "'A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (quoting *Kennedy v. Texas Utils.*, 179 F.3d 258, 265 (5th Cir. 1999)).

## II.   AS A MATTER OF LAW, RULE 60(A) DID NOT AUTHORIZE THE DISTRICT COURT TO CHANGE THE PREJUDICIAL EFFECT OF THE JUDGMENT

The district court erred as a matter of law in determining that Rule 60(a) governed Maxim's request to modify the judgment. There are three requirements for changes to judgments under Rule 60(a); the district court's order violates all three.

*First*, "the mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." *Rivera*, 647 F.3d at 193-94 (internal quotations omitted). Here, the "mistake," if any, was Maxim's counsel's substantive mistake of law.

*Second*, Rule 60(a) may only be used to make "corrections that are consistent with the court's intent at the time it entered the judgment." *Id.* at 195. A court may not "clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992). The court's original judgment entered the order agreed to and requested by the parties, who were free to seek a dismissal with or without prejudice; the court had no intention at the time of entering a judgment other than what the parties sought. The Amended Order impermissibly reflects a new intent based on the court's subsequent analysis of what the parties *ought* to have requested.

*Third*, Rule 60(a) cannot be used to change a judgment in a way that "affects the substantive rights of the parties," *i.e.*, "expands the scope or modifies the content of the court's adjudication." *Rivera*, 647 F.3d at 198-99. Here, the entire purpose of the Amended Order requested by Maxim was to eliminate the *res judicata* effect of the original order on Maxim's North Carolina counterclaims. BB&T had a *res judicata* defense, which the new judgment extinguished – a forbidden change to "the substantive rights of the parties."

For each of these reasons, the Amended Order constitutes reversible error.

## A. The Amended Judgment Did Not Correct A "Clerical Mistake" Or "Mistake Arising From Oversight Or Omission" As Required By Rule 60(a)

The purported mistake in the original July 16 Order was a mistake of law on the part of Maxim's counsel and was therefore not within the scope of Rule 60(a). Rule 60(a) allows a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment." Fed. R. Civ. P. 60(a). "Because the court can exercise its authority under Rule 60(a) at any time, it may do so only to provide 'a specific and very limited type of relief,' relief that is different in kind from an alteration or amendment of the judgment under Rule 59(e) or relief due to mistake or inadvertence under Rule 60(b)(1)." *Rivera*, 647 F.3d at 193.

Rule 60(a) allows corrections of only an extremely limited type of errors: those that are clerical in nature. *Id.* at 194; *see also Jones v. Anderson-Tully Co.*, 722 F.2d 211, 212-13 (5th Cir. 1984) ("Although Rule 60(a) clerical mistakes need not be made by the clerk, they must be in the nature of recitation of amanuensis mistakes that a clerk might make."). As the Fifth Circuit has emphasized, "[c]lerical mistakes, inaccuracies of transcription, inadvertent omissions, and errors in mathematical calculation are within Rule 60(a)'s scope; *missteps involving substantive legal reasoning are not*." *Rivera*, 647 F.3d at 194 (emphasis added).

22

Accordingly, the Fifth Circuit has described the errors within Rule 60(a)'s scope as "mindless and mechanistic mistakes" such as a "clerical error, a copying or computational mistake," *In re West Tex. Mktg. Corp.*, 12 F.3d 497, 505 (5th Cir. 1994); "rote, typographical error[s]," *Rivera*, 647 F.3d at 194; "mis-recitation[s] of the record," *Dura-Wood Treating Co. v. Century Forest Indus.*, 694 F.2d 112, 114 (5th Cir. 1982); and "errors made in transcribing or recording the judgment," *Warner v. Bay of St. Louis*, 526 F.2d 1211, 1212 (5th Cir. 1976).  Consistent with the narrow scope of Rule 60(a), courts have allowed correction of the following errors under that provision:

- Mistakenly listing a damages amount of $1,200 instead of $12,000 (*Allied Materials Corp. v. Superior Prods. Co.*, 620 F.2d 224, 226 (10th Cir. 1980));
- Incorrectly recording the amount of attorneys' fees as stipulated by the parties as $2,100 instead of $6,780 (*Dura-Wood*, 694 F.2d at 113-14;
- Mis-identifying one party as "Donald Hodge" rather than "Robert D. Hodge" (*Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 156, 158 (2d Cir. 2001));
- Omitting $2,000 in liquidated damages from the total damages amount awarded (*Chavez v. Balesh*, 704 F.2d 774 (5th Cir. 1983)).

Here, the nature of the purported mistake was far from the sort of "rote," "mechanical," or "mindless" error courts have held may be corrected under Rule 60(a).  Rather, the "with prejudice" language in the district court's original order was *specifically agreed to by the parties*.  Whether or not Maxim's counsel understood the legal consequences of that agreement is beyond the scope of Rule 60(a).  The record makes clear that the "with prejudice" nature of the order was

frequently noted in the parties' communications and was an agreed-upon feature of

the Proposed Order:

- Counsel for Maxim first proposed the "*with prejudice*" dismissal, using that precise language, in a July 6 teleconference with counsel for BB&T.  A102-03.

- During that teleconference, counsel for BB&T orally agreed to recommend to BB&T to accept Maxim's proposal to dismiss the Texas action "*with prejudice*."  *Id.*

- On July 9, counsel for BB&T accepted Maxim's proposal in writing, noting that counsel for Maxim should "prepare and file the motion to dismiss *with prejudice* the E.D. Texas case, as you proposed on Friday."  Counsel for Maxim then confirmed that he would "start the paperwork for the dismissal."  A112, A103.

- On July 11, counsel for BB&T followed up to remind Maxim to send BB&T "the motion to dismiss *with prejudice* the Texas action so we can move this along."  A117, A103.

- That same day, counsel for Maxim sent BB&T a draft Notice of Voluntary Dismissal and Proposed Order, both of which explicitly sought a dismissal "*with prejudice*."  A104.

- Later that day, counsel for BB&T wrote to Maxim, stating, "My client is in agreement with the proposed Order for dismissal *with prejudice* of the Texas action."  A116, A104.

- Maxim filed the Notice of Voluntary Dismissal and Proposed Order that same day.  Both documents referred to the "*with prejudice*" nature of the dismissal.  A121-24.

- The same day, counsel for BB&T again wrote to Maxim and referred to "the filed Texas papers seeking an order of dismissal *with prejudice*."  A126, A104-05.

- The next day, July 12, counsel for Maxim sent BB&T the filed Notice of Dismissal and Proposed Order, both of which sought a dismissal "*with prejudice*," as the drafts had reflected.  A105, A121-24.

- Also on July 12, BB&T filed papers in the MDL which noted that Maxim "offered to dismiss *with prejudice* the Texas action," that "BB&T accepted Maxim's offer," and that Maxim had "filed a Notice of Voluntary Dismissal

in the Texas Action and a Proposed Order dismissing all claims ***with prejudice***." A105, A133.

- Finally, on July 16, the court signed the Proposed Order and entered it exactly as written, providing: "All claims asserted by Plaintiff against Defendant [BB&T] are hereby dismissed ***with prejudice***." A24.01 (July 16 Order).

- The court entered a docket entry recording the dismissal, noting that Maxim's claims "are hereby DISMISSED ***WITH PREJUDICE***." A10 (Docket Entry for ECF No. 9).[7]

In short, the parties and the district court explicitly referenced the "with prejudice" nature of the dismissal at least *a dozen* separate times up to and around the date of the judgment. This sort of deliberate use of language is not correctable under Rule 60(a). *See McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 691 (10th Cir. 1989) ("Rule 60(a) may not be used to change something that was deliberately done, … even though it was later discovered to be wrong."); *see also Bowen Inv., Inc. v. Carneiro Donuts, Inc.*, 490 F.3d 27, 29 (1st Cir. 2007) (Rule 60(a) "does not … provide for the correction of 'the deliberate choice of the district judge.'").

Significantly, the parties *chose* to submit an *order* for entry by the Court, rather than proceed by way of a simple notice, as Maxim could have done. *See* Fed. R. Civ. P. 41(a)(1) (providing that a party may voluntarily dismiss by notice before a responsive pleading). This is consistent with the fact that Maxim chose to seek an agreement with BB&T, which included BB&T's promise to withdraw its MDL transfer opposition and to hold an in-person meeting between the parties'

---

[7] All emphasis of **"*with prejudice*"** are added.

principals.    And while Maxim could have acted unilaterally under Rule 41(a)(1)(A), the rule also permits the parties to act jointly "by stipulation" or dismissal "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).  Although Rule 41(a) sets forth default presumptions for the preclusive effect of dismissals, the rule also specifies that the notice, stipulation, or order may specify whether it is with or without prejudice.  Fed. R. Civ. P. 41(a).  It is evident from the parties' exchange that this was not a mere unilateral dismissal without prejudice by Maxim.  Rather, the parties came to an agreement, with terms that included the language of the Proposed Order.  It was fully within the power of the parties to agree to seek an order of dismissal "with prejudice," and they did so, as part of a broader agreement by which Maxim obtained certain cooperation from BB&T.

Tellingly, Maxim's moving papers acknowledged that it intended the dismissal to have preclusive effect beyond a simple dismissal without prejudice; thus, the Texas Court's Amended Order admittedly does *not* reflect Maxim's initial intent or understanding.  Although it turns out Maxim believed the prejudicial effect of the dismissal "with prejudice" would be partial (as to some jurisdictions), rather than full (as to all jurisdictions), there is no dispute that Maxim intended to obtain a dismissal with at least *some* prejudicial effect.  In the Proposed Rule 60 Order that accompanied Maxim's Rule 60 motion, Maxim did not request a simple

dismissal without prejudice; rather it sought language *limiting* the preclusive effect.

Specifically, Maxim requested the following language:

> All claims asserted by Plaintiff against Defendant Branch Banking and Trust Company are hereby dismissed. The dismissal is without prejudice to Plaintiff's counterclaims previously filed in *Branch Banking and Trust Company v. Maxim Integrated Products, Inc.,* Case No. 2:12-cv-00945-NBF (W.D. Pa.), as originally indicated in the Notice of Dismissal (Dkt. #8). Maxim shall pursue its claims in that case, and shall not re-assert those claims in this Court.

A34.01 (Proposed Rule 60 Order).   Maxim's motion likewise stated only that Maxim did not want the dismissal to have "any preclusive effect *on claims filed in another venue*," implying that Maxim *did* intend preclusive effect in *this* venue (the Texas Court).   A27 (emphasis added).

Thus, the district court's assertion that "the logical intent of the court was to dismiss the case without prejudice," A4, and subsequent Amended Order dismissing "without prejudice" substituted the court's own view of what "should have been" the parties' agreement for what *was* the parties' agreement.   The Amended Order would permit Maxim to refile its claims in Texas tomorrow, yet Maxim has acknowledged it intended to bargain away that right by agreeing to file a "with prejudice" dismissal.   The Amended Order is therefore contrary to the intent of the parties who proposed the dismissal.

The foregoing amply demonstrates that Maxim intended to use the words "with prejudice" but did not fully grasp the legal consequences of a "with

prejudice" dismissal at the time. It is well-settled that Rule 60(a) does not address this sort of error by a litigant or its counsel, or even the court itself. *See, e.g., Logan v. Burgers Ozark Country Cured Hams*, 263 F.3d 447, 454 (5th Cir. 2001) (holding that changing the prejudicial effect of a judgment to correct a "misunderstanding" is a substantive change beyond Rule 60(a)); *Jones*, 722 F.2d at 212-13 (holding that "errors of substantive judgment" are "not clerical" but rather errors of "mistake, inadvertence, surprise, or excusable neglect governed by Rule 60(b)(1)").

Although the district court cited the Fifth Circuit's decision in *Rivera* as support, *Rivera* in fact demonstrates the extremely narrow scope of Rule 60(a) and confirms that 60(a) relief was inappropriate here. In *Rivera*, the district court had granted summary judgment for defendants and entered a final judgment that stated, "the Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED without prejudice." 647 F.3d at 192. Defendants sought to correct the clerical error in the judgment to clarify that the order granting summary judgment was, as a legal matter, *with* prejudice. The court allowed the change, for the simple reason that there was *no* explanation for the court's inclusion of the words "without prejudice" other than mere clerical error: the original judgment reflected a grant of summary judgment to defendants, and summary judgment is a merits adjudication that "is always with prejudice." *Id.* at 195 n.18 (quoting *Tuley*

28

*v. Heyd*, 482 F.2d 590, 594 n.2 (5th Cir. 1973)).  In those circumstances, revising the judgment to reflect the court's obvious contemporaneous intent was akin to correcting a typographical error and was appropriate under Rule 60(a):

> Changing the language of a dismissal that was entered following a grant of summary judgment to reflect that the dismissal was with prejudice does not require the exercise of judgment.  It requires nothing more than the court's recognition that it previously made an error of recitation.  As a result, we conclude that the district court's mistake in designating a post-summary-judgment dismissal as a dismissal without prejudice was clerical in nature.

*Id.* at 195.

The contrast between *Rivera* and this case could hardly be more stark. Unlike summary judgment, voluntary dismissals – including those sought by court order pursuant to Rule 41(a)(2), as here – can be *either* with or without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B) (explaining circumstances when dismissal by notice is "without" vs. "with" prejudice), 41(a)(2) (noting that dismissals by court order are "without prejudice" "*unless the order states otherwise*") (emphasis added).  Indeed, *Rivera* expressly distinguished that case from one involving voluntary dismissal under Rule 41, precisely because Rule 41 dismissals may have either character, and therefore the choice between a "with prejudice" or "without prejudice" dismissal is necessarily "a matter of judgment" that cannot be changed after the fact via a Rule 60(a) amendment.  647 F.3d at 195.

For these reasons, *Rivera* stated that "Rule 59(e) is the exclusive means for changing the prejudicial effect of a voluntary dismissal granted under Rule 41(a)(2)." *Id.*[8] While in *Rivera* the concept of "granting summary judgment without prejudice" was "internally incoherent," *id.* at 194, the same cannot be said where a case has been dismissed "with prejudice" in the voluntary dismissal context, since it is perfectly reasonable – indeed, routine – to order a case dismissed "with prejudice" upon the plaintiff's or parties' joint application. *See, e.g., Schwarz v. Folloder*, 767 F.2d 125, 129-30 (5th Cir. 1985) (holding that dismissal with prejudice of plaintiffs' claims was "an ordinary exercise of the district court's discretion under Rule 41(a)(2)"); *Morris v. City of Hobart*, 39 F.3d 1105, 1109-10 (10th Cir. 1994) (dismissing with prejudice upon plaintiff's application); *Larchmont Eng'g, Inc. v. Toggenburg Ski Ctr., Inc.*, 444 F.2d 490, 490-92 (2d Cir. 1971) (affirming dismissal with prejudice, noting that plaintiff may

---

[8] Despite Maxim's conflicting references in the district court proceedings – sometimes characterizing the dismissal as one under Rule 41(a)(2) and, at other times, Rule 41(a)(1)(A)(i) – the dismissal plainly was a Rule 41(a)(2) dismissal, since it sought a dismissal by court order rather than by mere notice. *See* Fed. R. Civ. P. 41(a)(2); A124 (Proposed Order). Although Maxim's Notice of Dismissal included a reference to Rule 41(a)(1)(A)(i), that label is not controlling, since it is the substance of a motion, not the name a party gives to it, that determines its effect. *See Britt v. Whitmire*, 956 F.2d 509, 513 (5th Cir. 1992) ("[I]t is not the label that a party places on a motion or the perceived nature of the relief sought, but the true nature of the relief sought that determines under which rule a motion should be classified."). That Maxim sought relief from the July 16 Order under Rule 60 further demonstrates that Maxim recognized that the July 16 Order, not the Notice of Dismissal alone, effected the dismissal. *See, e.g.,* A25 (referring to "the Court's Order dismissing this action" and asking the court "to clarify its Order").

have sought such a dismissal upon realizing the weakness of its patent infringement claims).  The district court committed legal error when it permitted Maxim to revise the language of its own proposed order of dismissal under Rule 60(a) based on Maxim's counsel's legal error.

### B.    The Amended Judgment Is Not Consistent With The Court's Intent At The Time The Original Judgment Was Entered

The district court's amendment of the July 16 Order constitutes reversible error for the separate reason that it does not reflect the court's intent at the time of the original judgment.  "A district court's authority under Rule 60(a) is [] limited to making corrections that are consistent with the court's intent at the time it entered the judgment."  *Rivera*, 647 F.3d at 195.  Accordingly, the Fifth Circuit has held that Rule 60(a) only "allows a judgment's 'with prejudice' … denomination to be changed when the change comports with the intent conveyed by the substance of the district court's adjudication."  *Id.* at 196.  To determine the court's original intent, reviewing courts typically look to sources such as transcripts from hearings held in connection with the order at issue, memorandum opinions accompanying a judgment, or other contemporaneous evidence clearly indicating the court's intent.  *See id.* (citing cases relying on these types of evidence).  Subsequent statements by the court about its prior intent are sometimes considered, *see id.* at 197, but are not as persuasive as contemporaneous evidence.  *See, e.g., Logan*, 263 F.3d at 454 (district court's subsequent attempt to state that the dismissal was "with prejudice"

31

was undermined by contemporaneous evidence indicating the court intended to dismiss "without prejudice").

The contemporaneous evidence here reflects that the court intended to enter the order requested by the parties. The original dismissal order was simply a signed version of the order Maxim had prepared and the parties had agreed upon. *Compare* A124 (Proposed Order) *with* A24.01 (July 16 Order) (adding only the date on which the order was signed). Indeed, the corresponding docket entry for the original Order emphasized the "with prejudice" nature of the dismissal. A10 (Docket Entry for ECF No. 9 (noting "[a]ll claims asserted by plaintiff against defendant [BB&T] are hereby DISMISSED WITH PREJUDICE").). The only plausible inference from this contemporaneous evidence, and the circumstances surrounding the dismissal, is that the district court intended to enter an order with the preclusive effect that the parties had agreed upon, *i.e.*, "with prejudice." *See id.*; *see also Dura-Wood*, 694 F.2d at 114 (recognizing that, where parties had stipulated to a certain amount of attorneys' fees and sought a court order awarding those fees, the court "clearly intended . . . to recite the stipulation as to reasonable attorneys' fees" and "to award the stipulated fees").

Indeed, there is at least significant doubt whether the court even *could* have overridden the parties' agreement and entered a dismissal without prejudice. *See Smoot v. Fox*, 340 F.2d 301, 302-03 (6th Cir. 1964) ("No case has been cited to us,

32

nor have we found any, where a plaintiff, upon his own motion, was denied the right to dismiss his case with prejudice."); *Schwarz*, 767 F.2d at 129-30 (citing *Smoot* for proposition that courts have held that a dismissal with prejudice "must be granted if requested by the plaintiff"); *Century Mfg. Co., Inc. v. Cent. Transp. Intn'l, Inc.*, 209 F.R.D. 647, 648 (D. Mass. 2002) (same).[9] At the very least, if the court had had a contemporaneous intent to reject the parties' request and impose a dismissal without prejudice, one would expect to see evidence of such intent at the time – like a request for briefing or, at the very least, crossing of the word "with" and substituting "without." There is no evidence the court had the intent of taking such an extraordinary step.

Notably, nowhere in the district court's order granting Maxim's motion does the court state that it, in fact, originally intended to dismiss the case "without prejudice." Instead, the court resorts to hindsight, conducting a retrospective review of the dismissal documents and the resulting consequences for Maxim and determining that it was *now* "apparent that the dismissal *should have been without prejudice*." A4 (first emphasis added). The court spoke not of its *actual* intent, but

---

[9] Even those few circuits that recognize exceptions to this general rule do so only in exceptional circumstances not applicable here – such as where the dismissal would adversely affect defendants or other parties to the litigation. *See, e.g., Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1049 (10th Cir. 2002) (declining to adopt the Sixth Circuit's "blanket rule" and recognizing that, in rare circumstances, granting a plaintiff's voluntary motion to dismiss with prejudice could lead to injustice for another party).

33

its "*logical* intent," reasoning that "[n]o chain of legal reasoning could possibly lead a court to conclude that this voluntary dismissal in favor of counterclaims already filed in another court should be with prejudice." *Id.* In other words, rather than conforming the judgment to its intent at the time of the original judgment, the district court sought to change the judgment "to reflect a new and subsequent intent because it perceive[d] its original judgment to be incorrect." *Burton*, 975 F.2d at 694. But this sort of hindsight-based modification is precisely what Rule 60(a) does *not* allow. *Id.*; *see also McNickle*, 888 F.2d at 682 ("Rule 60(a) may not be used to change something that was deliberately done, even though it was later discovered to be wrong.") (citations omitted); *Logan*, 263 F.3d at 454 (court not allowed to change prejudicial effect of judgment under Rule 60(a) to correct its own misunderstanding).

### C. The Amended Judgment Affected The Parties' Substantive Rights

The district court's Amended Order also violated Rule 60(a)'s third requirement because it impermissibly "affect[ed] the substantive rights of the parties" by "expand[ing] the scope or modif[ying] the content of the court's adjudication." *Rivera*, 647 F.3d at 198-99. As this Court has observed, "[t]he legal standard for determining whether a change is 'substantive' is a practical one – whether the motion seeks a revision which disturbs or revises legal rights and obligations that were settled by the previous judgment." *Maxus Energy Corp. v.*

34

*United States*, 31 F.3d 1135, 1139 (Fed. Cir. 1994). There is no reasonable dispute that the Amended Order disturbed BB&T's legal rights.

As in *Maxus*, changing the stated prejudicial effect of the judgment from "with prejudice" to "without prejudice" plainly worked a major change to the parties' legal rights and obligations. Based on the district court's July 16 Order, which clearly stated the case was dismissed "with prejudice," BB&T asserted a defense of *res judicata* in the MDL litigation. *See* A309 (BB&T Answer); A327 (BB&T Stay Motion). After Maxim brought its Rule 60 Motion, BB&T sought and obtained a stay of the MDL proceedings, reasoning that proceeding with discovery – as the other infringement defendants were poised to do – made no sense because Maxim's entire case against it was barred by *res judicata*. Following entry of the district court's Amended Order, BB&T was immediately forced to proceed full steam ahead in the MDL litigation on the grounds that the dismissal "without prejudice" eliminated any *res judicata* defense. A300 (reflecting lifting of stay). The Amended Order thus represents a significant expansion of Maxim's rights and corresponding contraction of BB&T's rights, in violation of Rule 60(a). *See, e.g., Maxus*, 31 F.3d at 1140 (adding "with prejudice" language to dismissal "was a significant substantive change to the rights of the parties under the order"); *Pfizer Inc.*, 422 F.3d at 130-31 (imposing requirement that employee sign a standard release as a condition to receiving arbitrated award,

when not previously specified, "was a new substantive condition" that "changed the substantive rights of the parties").

## III.    THE COURT'S AMENDED ORDER IS AN IMPROPER ATTEMPT TO CIRCUMVENT THE LIMITS OF RULES 59(E) AND 60(B)(1)

Neither Rule 59(e) nor Rule 60(b)(1) would have authorized relief in the circumstances presented here.  And it would be inappropriate to permit Maxim to circumvent the limits of those rules by granting it relief under Rule 60(a).

Rule 59(e) motions must be brought within 28 days of the judgment. Although Maxim had time to file a Rule 59(e) motion after BB&T asserted its *res judicata* defense on August 6, 2012, Maxim allowed the 28-day filing period for Rule 59(e) motions to elapse without doing so.[10]  Having missed that deadline, Maxim cannot shoehorn a substantive amendment to the judgment into Rule 60(a). *See In re Galiardi*, 745 F.2d 335, 337 (5th Cir. 1984) (denying Rule 60(a) relief where plaintiff missed deadlines for Rules 59(e) and 60(b), since Rule 60(a) "does not grant a district court carte blanche to supplement by amendment an earlier order by what is subsequently claimed to be an oversight or omission"); *see also CNF Constructors, Inc. v. Donahoe Constr. Co.*, 57 F.3d 395, 400-01 (4th Cir. 1995) (denying relief where Rule 59(e) deadline was missed and Rule 60(b) was inapplicable); *cf. Rivera*, 647 F.3d at 195 ("Rule 59(e) is the exclusive means for

---

[10] Rule 59(e) allows a party to seek to alter or amend a judgment when there is "newly discovered evidence" or there has been "a manifest error of law or fact." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003).

changing the prejudicial effect of a voluntary dismissal granted under Rule 41(a)(2).").

Controlling precedent likewise foreclosed any relief under Rule 60(b)(1). Rule 60(b), in contrast to Rule 60(a), permits corrections of substantive errors, but does so only in very limited circumstances. *See* Fed. R. Civ. P. 60(b); *Logan*, 263 F.3d at 454; *Jones*, 722 F.2d at 212-13; *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 363 (6th Cir. 1990) ("[I]f an error affects the substantive rights of the parties, it must be corrected under the provisions of Rule 60(b).") (citing *Jones*, 722 F.2d 212-13). In particular, Rule 60(b) provides that a court may "relieve a party" from a final judgment or order on grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Not just any "mistake" or mere "inadvertence" justifies relief, however; mistakes due to "counsel's carelessness with or misapprehension of the law" or "honest mistake[s]" that reflect a simple failure to weigh the consequences of one's actions are not within Rule 60(b)'s reach. *See, e.g., Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576-79 (10th Cir. 1996) (describing types of mistakes that are outside the scope of Rule 60(b)(1)).

Both the Fifth and Second Circuits have confronted scenarios where, as here, a plaintiff sought and obtained a dismissal "with prejudice" but later tried to render that dismissal "without prejudice," claiming mistake. Both Circuits denied that

relief, holding that a party or its counsel's failure fully to understand the legal import of a "with prejudice" dismissal is not rectifiable through Rule 60(b).[11]

The Fifth Circuit, whose precedent governs here, specifically rejected reliance on Rule 60(b) to correct counsel's failure to understand the preclusive effects of a "with prejudice" dismissal.  In *Pettle*, plaintiff had brought a motion to dismiss his own adversarial action, which the court granted, adopting plaintiff's proposed order stating the case was dismissed "with prejudice."  410 F.3d at 190-91.  As here, plaintiff mistakenly believed the with prejudice dismissal would have preclusive effect only on the claims pending in the federal forum.  *See id*. at 191.  When plaintiff discovered the dismissal would bar him from litigating a previously filed state court action as well, he sought relief from the bankruptcy court order under Rule 60(b).  *Id*.  The bankruptcy court denied that relief, but on appeal the district court reversed, finding the bankruptcy court failed to consider that plaintiff "had acted in good faith and that the case had not been decided on its merits."  *Id*.  On appeal, the Fifth Circuit reversed, agreeing with the bankruptcy court that Rule

---

[11] These cases also stand for the proposition that where plaintiff's, or plaintiff's counsel's, voluntary actions play a role in obtaining the dismissal with prejudice, the party is estopped from seeking relief from that dismissal.  *See Pettle*, 410 F.3d at 192 (noting that "'[v]oluntary action also may estop a party from seeking relief on the ground of mistake or excusable neglect,'" including in the context of voluntary dismissals) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2858 (2d ed. 1995)); *Nemaizer*, 793 F.2d at 62 (emphasizing that plaintiff's counsel's actions, while based on a misreading of the law, were nonetheless voluntary, foreclosing relief from the dismissal with prejudice).

60 relief was improper and emphasizing that "inadvertent mistake, gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief." *Id.* at 192. Specifically, the court noted that "'a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court.'" *Id.* (citing *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356-57 (5th Cir. 1993)). Although plaintiff had not intended for the dismissal to bar his ongoing state action, that was the unavoidable consequence of the "with prejudice" dismissal he sought and obtained in the bankruptcy action. *See id.* at 193.

Similarly, in *Nemaizer*, 793 F.2d 58, plaintiff had filed a stipulation dismissing his federal court action based on state law claims "with prejudice." When he later learned that this dismissal would preclude him bringing an action based on the same facts but raising federal claims, plaintiff sought relief under Rule 60(b). The district court granted that relief, finding that entering into the stipulation was the product of "a genuine misunderstanding" regarding the scope and *res judicata* effect of the dismissal. *Id.* at 60. Plaintiff had intended the "with prejudice" dismissal to encompass only his original state law claims, not federal actions based on the same facts. *Id.* On appeal, the Second Circuit reversed, finding the district court abused its discretion in granting Rule 60(b) relief based on

39

plaintiff's misapprehension of the law. In language that squarely applies here, the

Court noted:

> The parties voluntarily agreed to dismiss plaintiff's action with prejudice. The clear language of the district court's order served notice that basic *res judicata* principles would bar future actions. Insofar as [plaintiff] or his counsel read the order's "proper" and "technical" language differently, he misread the law. More likely, the consequences of entering into such an agreement were not fully weighed. Admittedly, the choice made was poor, but even if responsibility rests with plaintiff's prior counsel, Rule 60(b)(1) does not provide an avenue for relief.

*Id.* at 62. Although an "honest mistake," *id.*, it was not sufficient to justify Rule

60(b) relief.

Maxim's "mistake" here is identical to those at issue in *Pettle* and *Nemaizer*.

*See supra*, at 22-31 (discussing nature of Maxim's claimed mistake). Thus,

Rule 60(b) would not have authorized the relief granted by the district court. The

district court committed legal error when it permitted Maxim to avoid the

limitations of Rule 60(b) by granting it relief under Rule 60(a). The court inverted

the relationship of the Rule's provisions, under which Rule 60(a) is the *narrower*

of the two. *Rivera*, 647 F.3d at 193.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's determination and reinstate the July 16 Order dismissing the case "with prejudice."

Respectfully submitted,

September 3, 2013

/s/ Douglas H. Hallward-Driemeier
Douglas H. Hallward-Driemeier
James R. Myers
Henry Huang

ROPES & GRAY LLP
One Metro Center
700 12th St., NW, Suite 900
Washington, DC  20005
Telephone:  (202) 508-4600
Facsimile:   (202) 508-4650

*Attorneys for Appellant Branch
Banking and Trust Company*

# Addendum

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| MAXIM INTEGRATED PRODUCTS, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:12-CV-369 |
| | § | |
| BRANCH BANKING AND TRUST CO., | § | |
| | § | |
| *Defendant.* | § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR CLARIFICATION**

The following are pending before the court:

1.   Motion and memorandum for clarification, correction, reconsideration and/or relief under Rule 60 with respect to the order dismissing action (docket entry #11);

2.   Sealed Opposition to Maxim Integrated Products, Inc.'s motion for clarification, correction, reconsideration and/or relief under Rule 60 with respect to the order dismissing action (docket entry #15);

3.   Sealed Reply in support of Maxim's motion for relief with respect to the order dismissing action (docket entry #17); and

4.   Sealed sur-reply to Maxim Integrated Products, Inc.'s motion for clarification, correction, reconsideration and/or relief under Rule 60 with respect to the order dismissing action (docket entry #20).

Having considered the motion and the related briefing, the court finds that the motion should be granted.

By way of background, the Plaintiff filed its complaint for patent infringement in this court on June 19, 2012.  On June 20, 2012, the Plaintiff notified the court that the instant lawsuit was related to certain multidistrict litigation proceedings.  On July 11, 2012, the Plaintiff filed its "Notice of Voluntary Dismissal" (docket entry #8).  The notice provides as follows:

Please take notice that, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiff Maxim Integrated Products, Inc. voluntarily dismisses this action with prejudice in favor of its counterclaims filed today in *Branch Banking and Trust Company v. Maxim Integrated Products, Inc.*, Case No. 2:12-cv-00945-NBF (W.D. Pa.), the opposing party having served neither an answer nor a motion for summary judgment.

The Plaintiff attached a proposed order to its notice of voluntary dismissal. The proposed order provided as follows:

Having considered Plaintiff Maxim Integrated Products, Inc.'s ("Plaintiff") Notice of Voluntary Dismissal the Court finds that good cause exists for granting the notice. The Notice of Voluntary Dismissal is GRANTED. All claims asserted by Plaintiff against Defendant Branch Banking and Trust Company are hereby dismissed with prejudice. Each party will bear its own costs and attorneys' fees.

On July 13, 2012, the court, adopting the Plaintiff's proposed order, signed the following order:

Having considered Plaintiff Maxim Integrated Products, Inc.'s ("Plaintiff") Notice of Voluntary Dismissal the Court finds that good cause exists for granting the notice. The Notice of Voluntary Dismissal [de #8] is GRANTED. All claims asserted by Plaintiff against Defendant Branch Banking and Trust Company are hereby dismissed with prejudice. Each party will bear its own costs and attorneys' fees.

Thereafter, on September 10, 2012, the Plaintiff filed the motion presently at issue before the court. In its motion, the Plaintiff advised the court that because the court dismissed its lawsuit with prejudice, as requested, Branch Banking and Trust Company is now asserting the affirmative defense of res judicata to Maxim Integrated Products Inc.'s counterclaims in the Pennsylvania lawsuit. The Plaintiff, accordingly, is seeking clarification from the court regarding the nature of the dismissal of the instant lawsuit pursuant to Rule 60 of the Federal Rules of Civil Procedure. The court notes that the related Pennsylvania lawsuit has been stayed pending a ruling from this court.

Ironically, this simple voluntary dismissal has produced extensive arguments and briefing post judgment. Rule 60(a) of the Federal Rules of Civil Procedure permits a court to "correct a

clerical mistake or a mistake arising from oversight or omission whenever one is found in a

judgment, order, or other part of the record." FED. R. CIV. P. 60(a).  A motion pursuant to Rule 60(a)

of the Federal Rules of Civil Procedure "'can only be used to make the judgment or record speak the

truth and cannot be used to make it say something other than what originally was pronounced.'"

*Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011), quoting *In re Galiardi*, 745 F.2d 335,

337 (5th Cir. 1984) (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 2854 (2d ed. 1977)).

　　　"A district court's authority under Rule 60(a) is . . . .limited to making corrections that are

consistent with the court's intent at the time it entered the judgment." *Id*. at 195 (citations omitted).

"Rule 60(a) finds application where the record makes apparent that the court intended one thing but

by merely clerical mistake or oversight did another." *Id*. at 196 (citations omitted).  "Whether a

mistake is correctable under Rule 60(a) turns on whether the judgment reflects the actual intention

of the court, not the shared understanding of the parties." *Id*. at 198 (citation omitted).  "The Rule's

purpose is to police any disconnect between the adjudication and the judgment, not between the

judgment and the parties' understanding thereof." *Id*. (citation omitted).  Rule 60(a) permits "a

judgment's 'with prejudice' or 'without prejudice' denomination to be changed when the change

comports with the intent conveyed by the substance of the district court's adjudication." *Id*. at 196.

In sum,

> The relevant inquiry under Rule 60(a) is not whether making the correction will have
> any effect on the parties' rights and obligations under the judgment.  Most of the
> time, it will.  Rather, the question is whether granting the motion would require the
> district court either to adjudicate an issue it has not previously reached or to make a
> substantive modification to a prior adjudication.  Where the record makes it clear that
> an issue was actually litigated and decided but was incorrectly recorded in or
> inadvertently omitted from the judgment, the district court can correct the judgment

under Rule 60(a), even where doing so materially changes the parties' positions and leaves one party to the judgment in a less advantageous position.

*Id.* at 199 (citations omitted).

Here, the court based its order of dismissal on the Plaintiff's notice of voluntary dismissal. The notice specifically stated that ". . . Plaintiff Maxim Integrated Products, Inc. voluntarily dismisses this action with prejudice in favor of its counterclaims filed today in *Branch Banking and Trust Company v. Maxim Integrated Products, Inc.*, Case No. 2:12-cv-00945-NBF (W.D. Pa.) . . ." In reviewing the Plaintiff's notice of voluntary dismissal, it is clear that the dismissal of the instant action was premised upon the acknowledgment that the counterclaims mirroring the instant claims were already filed in the Pennsylvania action.  Based on the language contained in the notice of voluntary dismissal, it is apparent that the dismissal should have been *without* prejudice.  A dismissal with prejudice simply does not make sense.  While the parties went to great lengths to advise the court of their respective positions, in the end, it is the court's intent that is at issue.  In this case, the logical intent of the court was to dismiss the case without prejudice.  No chain of legal reasoning could possibly lead a court to conclude that this voluntary dismissal in favor of counterclaims already filed in another court should be with prejudice.  *See id.* at 194.  Based on the foregoing, it is hereby

**ORDERED** that the Plaintiff's motion and memorandum for clarification, correction, reconsideration and/or relief under Rule 60 with respect to the order dismissing action (docket entry #11) is **GRANTED**.  The court will issue an amended order of dismissal on this date.

**SIGNED this the 22nd day of May, 2013.**

*Richard A. Schell*
_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

**A4**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| MAXIM INTEGRATED PRODUCTS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:12-CV-369 |
| | § | |
| BRANCH BANKING AND TRUST CO., | § | |
| | § | |
| *Defendant*. | § | |

## AMENDED ORDER OF DISMISSAL

Having considered Plaintiff Maxim Integrated Products, Inc.'s ("Plaintiff") Notice of Voluntary Dismissal the court finds that good cause exists for granting the notice. The Notice of Voluntary Dismissal [de #8] is GRANTED. All claims asserted by Plaintiff against Defendant Branch Banking and Trust Company are hereby dismissed without prejudice. Each party will bear its own costs and attorneys' fees.

**SIGNED this the 22nd day of May, 2013.**

*Richard A. Schell*
_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify pursuant to Fed. R. App. P. 25 and Fed. Cir. R. 25 that the foregoing was filed electronically using the Court's CM/ECF filing system on September 3, 2013, which will provide service to all counsel registered with the CM/ECF system.


September 3, 2013                    <u>/s/ Douglas H. Hallward-Driemeier</u>
                                     Douglas H. Hallward-Driemeier

**Form 19**

FORM 19.   Certificate of Compliance With Rule 32(a)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [           *10,082*           ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using [           *Microsoft Word 2010*           ] in [           *Times New Roman, 14 point font*           ], or

☐    The brief has been prepared in a monospaced typeface using [   *state name and version of word processing program*   ] with [ [   *state number of characters per inch and name of type style*   ].

/s/ Douglas H. Hallward-Driemeier
_____
(Signature of Attorney)

Douglas H. Hallward-Driemeier
_____
(Name of Attorney)

Appellant
_____
(State whether representing appellant, appellee, etc.)

September 3, 2013
_____
(Date)

[ Reset Fields ]

142