2013-1495

# United States Court of Appeals
# for the Federal Circuit

---

MAXIM INTEGRATED PRODUCTS, INC.,

*Plaintiff-Appellee,*

v.

BRANCH BANKING AND TRUST COMPANY,

*Defendant-Appellant,*

---

*Appeal from the United States District Court for the Eastern District
of Texas in Case No. 12-CV-0369, Judge Richard A. Schell*

---

### BRIEF FOR PLAINTIFF-APPELLEE
### MAXIM INTEGRATED PRODUCTS, INC.

---

Philip W. Marsh
James C. Otteson
David A. Caine
Michael D.K. Nguyen
AGILITY IP LAW, LLP
149 Commonwealth Dr.
Menlo Park, CA 94025
Telephone: (650) 227-4800
Facsimile: (650) 318-3483

*Attorneys for Plaintiff-Appellee
Maxim Integrated Products, Inc.*

Matthew D. Powers
William P. Nelson
Aaron M. Nathan
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Facsimile: (650) 802-6001

*Attorneys for Plaintiff-Appellee
Maxim Integrated Products, Inc.*

October 18, 2013

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Maxim Integrated Products, Inc.    v.  Branch Banking and Trust Company

No. 2013-1495

# CERTIFICATE OF INTEREST

Counsel for the ~~(petitioner)~~ ~~(appellant)~~ ~~(respondent)~~ (appellee) ~~(amicus)~~ (name of party)
Maxim Integrated Products, Inc. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:


Maxim Integrated Products, Inc.

---

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:


Maxim Integrated Products, Inc.

---

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:


None

---

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

(Please see attached sheet)

---

|  |  |
|---|---|
| October 18, 2013 | /s/ Philip W. Marsh |
| Date | Signature of counsel |
|  | Philip W. Marsh |
|  | Printed name of counsel |

Please Note: All questions must be answered
cc:  Appellant's Counsel

---

i

**4.** The following attorneys and law firms appeared for Maxim Integrated Products, Inc. in the trial court or are expected to appear in this court:

| Agility IP Law, LLP: | Tensegrity Law Group LLP: | Spangler & Fussell PC: |
|---|---|---|
| James C. Otteson | Matthew D. Powers | Andrew W. Spangler |
| Philip W. Marsh | William P. Nelson | James A. Fussell III |
| David A. Caine | Aaron M. Nathan | |
| Michael D.K. Nguyen | | |

This matter is related to:

*Branch Bank and Trust Company v. Maxim Integrated Products, Inc.*,
**Case No. 2:12-cv-00945-JFC,**

which is currently pending in the United States District Court for the Western District of Pennsylvania ("the 945 Action"). The 945 Action is part of the following multidistrict litigation (MDL) proceeding:

*In re Maxim Integrated Products, Inc.*,
**MDL No. 2354, Case No. 2:12-mc-00244-JFC**

The following attorneys and law firms have appeared for Maxim Integrated Products, Inc. in connection with the 945 Action:

| Agility IP Law, LLP: | Tensegrity Law Group LLP: | Leland Schermer & Assoc. |
|---|---|---|
| James C. Otteson | Matthew D. Powers | Leland P. Schermer |
| Philip W. Marsh | Steven S. Cherensky | Bryan A. Loose |
| Michael D.K. Nguyen | Paul T. Ehrlich | |
| | William P. Nelson | |
| | Stefani C. Smith | |
| | Aaron M. Nathan | North Weber & Baugh LLP |
| | Sam Kim | Michael V. North |
| | Robert L. Gerrity | |
| | Palani Rathinasamy | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF CONTENTS.......................................................................... iii

TABLE OF AUTHORITIES ...................................................................v

STATEMENT OF RELATED CASES ................................................. ix

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE.................................................................2

STATEMENT OF THE FACTS .............................................................7

      A.    The Dispute Between the Parties Involves BB&T's use of Maxim's Patented Technology Relating to Secure Transactions Using Mobile Devices. ....................................7

      B.    Maxim's Dismissal Papers, Which Maxim Alone Signed and Filed, Reflect a Clerical Error, Not an Agreement or Intent to Dismiss with Prejudice. ..............................8

      C.    BB&T Has Pleaded, Not Proven, a *Res Judicata* Defense.......15

SUMMARY OF ARGUMENT ..............................................................16

ARGUMENT .........................................................................................20

    I.      STANDARD OF REVIEW. ................................................20

    II.    THE DISTRICT COURT PROPERLY DETERMINED THAT RULE 60(a) AUTHORIZED IT TO CORRECT A CLERICAL MISTAKE IN THE DISMISSAL ORDER. ......................................21

      A.    The Mistake was Clerical in Nature. ......................................23

      B.    The District Court Intended to Dismiss the Case Without Prejudice. ....................................................................26

      C.    The District Court's Correction Did Not Affect Any Substantive Rights of BB&T. ................................................33

      D.    The District Court's Correction of the Dismissal Error is Reviewed for an Abuse of Discretion. ................................39

III.   THE DISTRICT COURT'S ORDER DOES NOT
       CIRCUMVENT RULES 59(e) OR 60(b). ........................................40

       A.    Fifth Circuit Precedent Confirms that Rules 59(e) and
             60(b) Provide Different, Independent Grounds for Relief. ......40

       B.    The Cases BB&T Cites Do Not Support BB&T's
             "Circumvention" Arguments. ...................................................43

IV.    THE DISTRICT COURT'S ORDER MAY ALTERNATIVELY
       BE AFFIRMED UNDER RULE 60(b) ............................................46

       A.    This Court May Affirm the District Court's Correction
             Under Alternative Grounds. ....................................................47

       B.    The District Court's Correction of the Order Would
             Also Be Appropriate Under Rule 60(b). ..................................48

CONCLUSION .........................................................................................57

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A.C. Auckerman Co. v. R.L. Chaides Const. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) ...................................................7

*Agro Dutch Indus. Ltd. v. United States*,
   589 F.3d 1187 (Fed. Cir. 2009) ...............................................23

*Allied Materials Corp. v. Superior Prods. Co., Inc.*,
   620 F.2d 224 (10th Cir. 1980) ................................... 17, 22, 30

*Am. Family Life Assur. Co. v. Blue Cross of Fla., Inc.*,
   486 F.2d 225 (5th Cir. 1973) ......................................... 21, 48

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012) ...............................................36

*AstraZeneca Pharm. LP v. Apotex Corp.*,
   669 F.3d 1370 (Fed. Cir. 2012) ...............................................47

*Bowen Inv., Inc. v. Carneiro Donuts, Inc.*,
   490 F.3d 27 (1st Cir. 2007) .....................................................32

*Browning v. Levy*,
   283 F.3d 761 (6th Cir.2002) ...................................................36

*Brye v. Brakebush*,
   32 F.3d 1179 (7th Cir. 1994) ............................................ 34, 35

*Burton v. Johnson*,
   975 F.2d 690 (10th Cir. 1992) .................................................32

*Cashner v. Freedom Stores, Inc.*,
   98 F.3d 572 (10th Cir. 1996) ...................................................54

*CNF Constructors, Inc. v. Donohoe Constr. Co.*,
   57 F.3d 395 (4th Cir. 1995) .....................................................44

*Dura-Wood Treating Co. v. Century Forest Indus., Inc.*,
   694 F.2d 112 (5th Cir. 1982) ...................................................31

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) ...........................................................47

*Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*,
    784 F.2d 665 (5th Cir. 1986) ..............................................................41

*Helvering v. Gowran*,
    302 U.S. 238 (1937) ...........................................................................47

*Hildebrand v. Steck Mfg. Co., Inc.*,
    333 Fed. Appx. 507 (Fed. Cir. 2009) ................................................20

*In re Am. Precision Vibrator Co.*,
    863 F.2d 428 (5th Cir. 1989) ....................................................... 21, 48

*In re Comiskey*,
    554 F. 3d 967 (Fed. Cir. 2009) ..........................................................47

*In re Galiardi*,
    745 F.2d 35 (5th Cir. 984) ................................................................43

*In re Pettle*,
    410 F.3d 189 (5th Cir. 2005) ....................................................... 50, 51

*In re Tex. Wyo. Drilling, Inc.*,
    647 F.3d 547 (5th Cir. 2011) ....................................................... 36, 37

*In re W. Tex. Mktg. Corp.*,
    12 F.3d 497 (5th Cir. 1994) ......................................................... 25, 31

*ISC Holding AG v. Nobel Biocare Fin.*,
    688 F.3d 98 (2d Cir. 2012) ................................................................54

*Israel v. Carpenter*,
    120 F.3d 361 (2d Cir. 1997) ..............................................................53

*Jamesbury Corp. v. Litton Indus. Prods., Inc.*,
    756 F.2d 1556 (Fed. Cir. 1985) ..........................................................7

*Jones v. Anderson-Tully Co.*,
    722 F.2d 211 (5th Cir. 1984) ..............................................................46

*King v. Provident Life & Accident Ins. Co.*,
   23 F.3d 926 (5th Cir.1994) ................................................................. 37

*Koyo Seiko Co., Ltd. v. United States*,
   95 F.3d 1094 (Fed. Cir. 1996) .......................................................... 47

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
   714 F.3d 1289 (Fed. Cir. 2013) ....................................................... 20

*Logan v. Burgers Ozark Country Cured Hams, Inc.*,
   263 F.3d 447 (5th Cir. 2001) ...................................................... 45, 46

*Maxus Energy Corp. & Subsidiaries v. United States*,
   31 F.3d 1135 (Fed. Cir. 1994) ................................................ 37, 38, 39

*McNickle v. Bankers Life & Cas. Co.*,
   888 F.2d 678 (10th Cir. 1989) .......................................................... 30

*Md. v. Baltimore Transit Co.*,
   38 F.R.D. 340 (D. Md. 1965) ............................................................ 34

*Menier v. United States*,
   405 F.2d 245 (5th Cir. 1968) ............................................................ 48

*Mission Essential Pers., LLC v. United States*,
   104 Fed. Cl. 170 (Ct. Fed. Cl. 2012) ................................................ 27

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986) ........................................................ 52, 54

*Olle v. Henry & Wright Corp.*,
   910 F.2d 357 (6th Cir. 1990) ........................................................... 45

*Pattiz v. Schwartz*,
   386 F.2d 300 (8th Cir.1968) ............................................................ 23

*Pfizer Inc. v. Uprichard*,
   422 F.3d 124 (3rd Cir. 2005) .................................................. 37, 38, 39

*Pueblo De Taos v. Archuleta*,
   64 F.2d 807 (10th Cir. 1933) ........................................................... 35

*Rivera v. PNS Stores, Inc.*,
    647 F.3d 188 (5th Cir. 2011) ...................................................... passim

*Sec. & Exch. Comm'n v. Chenery Corp.*,
    318 U.S. 80 (1943) .................................................................. 19, 21, 47

*Seven Elves, Inc. v. Eskenazi*,
    635 F.2d 396 (5th Cir. 1981) ................................................. 48, 49, 50

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F. 2d 1530 (Fed. Cir. 1983) ..........................................................47

*Thyssen Steel Co. v. M/V Kavo Yerakas*,
    50 F.3d 1349 (5th Cir. 1995) ..............................................................54

*Warner v. City of Bay St. Louis*,
    526 F.2d 1211 (5th Cir.1976) .............................................................23

*Yesh Music v. Lakewood Church*,
    727 F.3d 356 (5th Cir. 2013) ...................................... 19, 50, 55, 56

## **Statutes**

28 U.S.C. § 1295 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 1338 ...............................................................................1

28 U.S.C. § 1407 ...............................................................................4

35 U.S.C. § 261 ................................................................................7

## **Rules**

Fed. R. Civ. P. 59 ..................................................................... passim

Fed. R. Civ. P. 60 ..................................................................... passim

## **Other Authorities**

18 Charles A. Wright et al., Federal Practice & Procedure § 4413 (1981) .............37

## STATEMENT OF RELATED CASES

Plaintiff-Appellee Maxim Integrated Products, Inc. ("Maxim") agrees that there have been no appeals in this case that were previously before this or any other appellate court.

Maxim also agrees that *Branch Banking & Trust Co. v. Maxim Integrated Prods., Inc.*, No. 5:12-cv-353 (E.D.N.C. filed June 18, 2012), which has now been consolidated in *In re Maxim Integrated Prods., Inc.*, MDL No. 2354, No. 2:12-mc-244 (W.D. Pa.), may directly affect or be directly affected by the instant appeal, but wishes to clarify that, as part of that MDL consolidation, the matter has been transferred and reassigned as *Branch Banking & Trust Co. v. Maxim Integrated Prods., Inc.*, No. 2:12-cv-945 (W.D. Pa.). That matter is referred to in this brief as both the "Pennsylvania action" and the "North Carolina action," depending on where it was pending at the time.

# JURISDICTIONAL STATEMENT

Plaintiff-Appellee Maxim Integrated Products, Inc. ("Maxim") agrees that the district court had subject matter jurisdiction over the patent infringement claims brought by Maxim pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295 with respect to the district court's May 23, 2013 Amended Order of Dismissal (Dkt. 31) and Order Granting Plaintiff's Motion for Clarification (Dkt. 29). *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 201 n.55 (5th Cir. 2011) (corrected judgment under Rule 60(a) appealable). Defendant-Appellant Branch Banking and Trust Company ("BB&T") states that the district court's July 16, 2012 and May 23, 2013 orders disposed of "all parties' claims in that action." BB&T did not file an answer or counterclaims in the underlying district court action from which it appeals, and thus did not assert any claims. The district court's May 23, 2013 orders corrected the wording of the order dismissing Maxim's claims, which were the only claims filed in that action.

# STATEMENT OF THE ISSUES

Appellee Maxim respectfully disagrees with BB&T's statement of the issues, and presents the following counterstatement of issues:

(1)    Whether a district court has authority under Federal Rule of Civil Procedure 60(a) to correct a clerical error in an order of dismissal, where that order

does not comport with "the logical intent of the court . . . to dismiss the case without prejudice."  A4.

(2)    Alternatively, whether an order mistakenly reciting that a dismissal should be "with prejudice" should be corrected under Federal Rule of Civil Procedure 60(b) to state that dismissal was "without prejudice."

## STATEMENT OF THE CASE

This is an appeal from the district court's amended order of dismissal, in which the district court corrected a prior dismissal order under Rule 60(a), because the prior dismissal order did not reflect the district court's intent that the case be dismissed *without prejudice*.  BB&T now appeals the district court's correction, arguing that the district court misstated its own intent and exceeded its authority by correcting the mistakenly worded dismissal.  BB&T's argument essentially asks this Court to believe that Maxim settled a multi-patent, multi-venue patent case, unilaterally, by accident, and for free before BB&T had even filed its answer.  The district court rejected BB&T's account, holding that "no chain of legal reasoning" could support it, and noting that its own logical intent was to dismiss the action *without prejudice*.  A4.  BB&T now asks this Court to hold that the district court exceeded its authority by correcting the order to comport with its own stated intent. The district court acted within its authority under Rule 60, did not abuse its discretion, and should be affirmed.

BB&T filed a declaratory judgment action against Maxim in the Eastern District of North Carolina on June 18, 2012, seeking a judgment of noninfringement and invalidity of four U.S. patents owned by Maxim. A294 (docket sheet). On June 19, 2012, the Eastern District of North Carolina issued a notice of deficiency, instructing BB&T to re-file its complaint. A294. Also on June 19, 2012, Maxim filed a complaint against BB&T in the Eastern District of Texas alleging that BB&T infringed U.S. Patent Nos. 5,940,510 (A191-212); 5,949,880 (A213-36); 6,105,013 (A237-61.01); and 6,237,095 (A262-87) (collectively the "Asserted Patents"). A14-24 (complaint). BB&T re-filed its complaint in the Eastern District of North Carolina on the same day. A294.

Earlier, on February 23, 2012, Maxim had filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") to transfer and consolidate pending lawsuits concerning the same Asserted Patents. A183 (MDL docket sheet). On June 11, 2012, the JPML granted Maxim's motion to transfer and consolidate the cases. A184. On June 20, 2012, Maxim filed a Notice of Potential Tag-Along Actions with the JPML identifying and requesting transfer of both the Eastern District of North Carolina and Eastern District of Texas actions involving BB&T. A159-60, A184. Two days later, on June 22, 2012, the JPML issued a conditional transfer order (CTO-2), in which it conditionally transferred both BB&T cases to the Western District of Pennsylvania for pretrial proceedings pursuant to 28 U.S.C.

§ 1407. A162-63. On June 29, BB&T filed a notice of opposition to the conditional transfer order with the JPML with respect to the Eastern District of Texas action, but not the Eastern District of North Carolina action. A165-67 ("BB&T does not oppose transfer . . . to the Western District of Pennsylvania for consolidation and coordination of pretrial proceedings before Judge Nora Barry Fischer." (emphasis in original)). On July 2, 2012, the JPML finalized the conditional transfer order as to the North Carolina action, and set a briefing schedule for BB&T's objection to the transfer of the Eastern District of Texas action. A185-86 (MDL docket sheet; Dkts. 109 & 110).

On July 6, 2012, counsel for Maxim and BB&T had a telephone call in which Maxim stated that it would dismiss the Eastern District of Texas action. A38-39 (¶¶ 17, 19), A155-57 (¶¶ 29-32). Maxim's counsel sent an email the same day confirming its intention to dismiss the Eastern District of Texas Action, but did not state that it would dismiss the action with prejudice. A113-14. Maxim's correspondence, on the other hand, did indicate Maxim's understanding that the North Carolina action would be transferred to Pennsylvania pursuant to the JPML's conditional transfer order. A113-14. BB&T responded, agreeing to the transfer of the North Carolina action to Pennsylvania. A112-13 ("BB&T has no objection to the pending E.D. North Carolina action being transferred by the JPML to the W.D. PA.").

On July 11, 2012, Maxim filed an answer and counterclaims in the Pennsylvania action responding to the declaratory judgment claims filed by BB&T in the transferred Eastern District of North Carolina action. A46-60. Later the same day, July 11, 2012, Maxim filed in the Eastern District of Texas action a document styled "Notice of Voluntary Dismissal." A41-42. In its notice, Maxim stated: "Please take notice that, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiff Maxim Integrated Products, Inc. voluntarily dismisses this action with prejudice in favor of its counterclaims filed today in *Branch Banking and Trust Company v. Maxim Integrated Products, Inc.*, Case No. 2:12-cv-00945-NBF (W.D. Pa.), the opposing party having served neither an answer nor a motion for summary judgment." A41. Maxim attached a form of "Order" to the Notice that indicated the notice was "granted" and repeated the "with prejudice" language of the notice. A44. On July 13, 2012, the district court signed an order dismissing Maxim's complaint with prejudice using the exact form of order that Maxim had submitted. *Compare* A44 & A24.01 (signed order) *with* A124 (submitted order).

On August 6, 2012, BB&T filed an answer to Maxim's counterclaims in the Pennsylvania action (transferred from North Carolina). A62-76. In its August 6 answer, BB&T alleged *res judicata* as its fifth defense, on the basis that the claims "were previously asserted in another lawsuit that is the subject of a final judgment dismissing the claims with prejudice." A68. Surprised by this defense, counsel for

Maxim telephoned counsel for BB&T the same day and, having failed to connect, sent an email the following day.  A36 (¶¶ 8-9).  As counsel for BB&T was out of the country, the parties did not speak by telephone until August 10, 2012.  A36 (¶¶ 8-9).  During the conversation, counsel for BB&T suggested that the principals should meet to discuss a settlement.  A36-37 (¶¶ 9-10).  When the principals ultimately spoke on August 31, 2012, BB&T stated that it believed Maxim's counterclaims were barred by the doctrine of *res judicata*.  A83 (¶ 4), *see* A142 (¶ 8).  A few days later, on September 10, 2012, Maxim filed a motion seeking relief from the July 13, 2012 order pursuant to Rule 60.  A25-A34.

On May 23, 2013, the district court in the Eastern District of Texas granted Maxim's motion, and amended the order of dismissal to state that it was "without prejudice."  A6.  The district court explained:

> In reviewing the Plaintiff's notice of voluntary dismissal, it is clear that the dismissal of the instant action was premised upon the acknowledgement that the counterclaims mirroring the instant claims were already filed in the Pennsylvania action.  Based on the language contained in the notice of voluntary dismissal, it is apparent that the dismissal should have been ***without*** prejudice.  While the parties went to great lengths to advise the court of their respective positions, in the end, it is the court's intent that is at issue.  In this case, the logical intent of the court was to dismiss the case without prejudice.  No chain of legal reasoning could possibly lead a court to conclude that this voluntary dismissal in favor of counterclaims already filed in another court should be with prejudice.

A4 (emphasis in original).  BB&T filed a notice of appeal on June 11, 2013 (A12, Dkt. 32), and this appeal followed.

## STATEMENT OF THE FACTS

**A.  The Dispute Between the Parties Involves BB&T's use of Maxim's Patented Technology Relating to Secure Transactions Using Mobile Devices.**

Maxim is a leading semiconductor designer and manufacturer based in California that employs over 9,300 people worldwide.  Maxim acquired Dallas Semiconductor and all of its assets in April 2001, when Dallas Semiconductor became a wholly owned subsidiary of Maxim.  The assets that Maxim acquired with the merger included the "Asserted Patents.  The Asserted Patents are directed to various systems and methods for performing secure mobile transactions using a portable device with advanced security capabilities, including enhanced encryption, decryption, and authentication capabilities, and were developed through significant research, development, and investment by Dallas Semiconductor.  *See* A191-287.  Those efforts by Maxim's subsidiary included development of a product called the Crypto iButton, as well as filing a number of patents to cover that product and the related technology, including the four Asserted Patents.[1]

---

[1]     Maxim does not agree with BB&T's characterizations of Maxim's enforcement of its valid, lawfully issued patents (*see* Blue Br. at 4), and those characterizations are not relevant to any issue on appeal.  *See Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 756 F.2d 1556, 1557-59 (Fed. Cir. 1985) ("This court has disapproved of a challenger's characterization of a patentee by the term 'monopolist', which is commonly regarded as pejorative.") overruled on other grounds by *A.C. Auckerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1038-39 (Fed. Cir. 1992).

On December 22, 2011, Maxim sent BB&T a letter with attachments, including claim charts for each of the Asserted Patents and a technical analysis explaining how use of BB&T's mobile banking applications infringed the Asserted Patents, and invited BB&T to take a license.  *See* A17 at ¶ 16.  Although the parties exchanged emails after that initial letter, BB&T never responded to Maxim's license invitation, and instead chose to initiate litigation.  A294.

      **B.**      **Maxim's Dismissal Papers, Which Maxim Alone Signed and Filed, Reflect a Clerical Error, Not an Agreement or Intent to Dismiss with Prejudice.**

BB&T expends considerable energy confecting a narrative in which it claims Maxim agreed to dismiss its claims against BB&T "with prejudice" in exchange for BB&T's agreement to meet with Maxim and withdraw its opposition to a conditional transfer of the North Carolina action.  Not only is BB&T's recitation of the facts implausible, it is also untrue and irrelevant.

*First*, Maxim had no reason to dismiss its patent infringement claims against BB&T in the Eastern District of Texas "with prejudice."  BB&T stated in a June 29, 2012, filing that "BB&T does not oppose transfer of *Branch Banking and Trust Company v. Maxim Integrated Products, Inc.*, Civil Action No. 5:12-cv-003530D (E.D.N.C.), also subject to the Panel's June 22, 2012 Conditional Transfer Order (CTO-2), to the Western District of Pennsylvania for consolidation and coordination of pretrial proceedings before Judge Nora Barry Fischer."  A165

(emphasis in original). On July 2, 2012, the JPML finalized the conditional

transfer order pertaining to the North Carolina action, leaving only the Eastern

District of Texas action in dispute. A185-86 (Dkts. 109 & 110, listing Texas

action and not listing North Carolina action as "Associated Case[]"), A187

(finalized CTO-2).[2] Consequently, by the time the parties spoke on July 6, 2012,

the JPML had already transferred the North Carolina action to Pennsylvania.

BB&T's explanation requires Maxim to have agreed to proceed on

counterclaims coextensive with affirmative claims it was going to dismiss "with

prejudice" just to obtain BB&T's agreement to have a meeting.[3] This explanation

is illogical, and contrary to the record. Maxim offered to dismiss the Texas action

in favor of its counterclaims in the North Carolina action, but did not state that the

dismissal in Texas would either be "with prejudice" or have a preclusive effect on

those counterclaims. A113-14 (confirmatory email). There is nothing in the

record to the contrary, other than a declaration from BB&T's own attorney, which

---

[2]     Although the conditional transfer order (CTO-2) was later reinstated, the docket sheet makes it clear that the reinstatement and later briefing was **only** as to the Eastern District of Texas case—the only case for which BB&T opposed transfer. A185-86 (Dkts. 109 & 110), A165-66 ("BB&T does not oppose transfer" of the North Carolina action (emphasis in original)).

[3]     Although BB&T argues that part of the alleged bargain was to avoid delay in the consolidated MDL proceedings (*see* Blue Br. at 11), because the North Carolina action had already been transferred before the parties first talked about dismissal on July 6, 2012, there would have been no delay even if BB&T did nothing.

is not supported by the contemporaneous written correspondence and is contradicted by BB&T's own statements that ***BB&T did not oppose transfer***. A113 ("BB&T has no objection to the pending E.D. North Carolina action being transferred by the JPML to the W.D. PA."); A116 ("We agree that all future motions will be made in the EDNC action which is subject to the MDL transfer order to the WDPA"); A165 ("BB&T does <u>not</u> oppose transfer . . . to the Western District of Pennsylvania for consolidation and coordination of pretrial proceedings before Judge Nora Barry Fischer." (emphasis in original)); *cf.* A38-39 (¶ 19).

**Second**, BB&T's recitation of the communications between the parties strives to paint Maxim as having agreed to dismiss "with prejudice" when Maxim never did so:

- BB&T suggests that Maxim was willing to dismiss its claims "with prejudice" because "Maxim became concerned that BB&T's transfer opposition could slow the progress of Maxim's large scale attack on the nation's most important financial services companies." But, as BB&T's own Notice of Opposition to Conditional Transfer Order and the MDL docket sheet confirms, the North Carolina action had already been transferred by the time the parties talked on July 6, 2012. A185-86 (Dkts. 109 & 110), A165-66 ("BB&T does <u>not</u> oppose transfer" of the North Carolina action (emphasis in original)).

10

- BB&T states that "Maxim offered to dismiss the Texas action with prejudice." Brief of Appellant Branch Banking and Trust Company, Dkt. 28 ("Blue Br.") at 5-6 (citing A102-03). No correspondence from Maxim reflects an offer by Maxim to dismiss the Texas action "with prejudice." Maxim denies making that illogical offer, and the written communications do not memorialize any such offer from Maxim. *See* A113 (confirming email from Maxim does not contain "with prejudice" language).

- BB&T asserts: "On July 9, BB&T agreed to Maxim's proposal in a written communication which stated expressly that, as part of the agreement, Maxim would move to dismiss the Texas action *with prejudice*." Blue Br. at 6 (emphasis in original, citing A103, A112-14). This carefully crafted sentence obscures that ***it was BB&T, not Maxim***, that stated: "Please prepare and file the motion to dismiss with prejudice . . . ." A112. Maxim's response email does not state any intent to dismiss the Texas action with prejudice. *Id*.

- BB&T asserts that "the parties repeatedly confirmed in email correspondence that Maxim would dismiss all claims *with prejudice*." Blue Br. at 7 (citing A104-05, A116-17, A127-29). But the record shows that only ***BB&T*** suggested dismissal "with prejudice." None of Maxim's

email communications used the words "with prejudice." *See* A112-14, A116-19, A126-31, A103-05 (¶¶ 6, 7, 9, 13, 15). Indeed, Maxim never agreed to dismiss the Texas action "with prejudice." A154 (¶ 24). No statements from Maxim in the record indicate otherwise.

- BB&T asserts that "Maxim's own counsel had proposed the dismissal 'with prejudice'" and "confirmed the 'with prejudice' nature of the dismissal in writing numerous times." Blue Br. at 10. The record shows that BB&T asked numerous times for a dismissal with prejudice, but BB&T includes ***no citation to the record*** to support its assertions that Maxim's counsel "confirmed the 'with prejudice' nature of the dismissal in writing numerous times," and the record contains no such written confirmation from Maxim's counsel. To the contrary, Maxim's counsel specifically stated "neither Maxim nor [he] agreed to dismiss Maxim's claims with prejudice." A154 (¶ 24), A156 (¶ 32).

Ultimately, Maxim drafted a dismissal notice and proposed order for the Texas action, but inadvertently started with forms of dismissal that included the words "with prejudice." A156 (¶ 34). Counsel for Maxim added language to the form of notice to indicate that the dismissal was "in favor of its counterclaims filed today in *Branch Banking and Trust Company v. Maxim Integrated Products, Inc.*, Case No. 2:12-cv-00945-NBF (W.D. Pa.)." A41, A156-57 (¶ 34). Regrettably,

Maxim's counsel did not change the language of the forms to indicate that the dismissal should be "without prejudice."  *Id.*, *see* A149.  This, however, was a clerical oversight, not an agreement by Maxim or its counsel to dismiss "with prejudice" claims that had not yet even been answered, let alone litigated on the merits or considered by any court.  *See* A154 (¶ 24) (no agreement to dismiss with prejudice).

In contrast, both parties clearly understood that Maxim intended to prosecute its patent infringement counterclaims in the Pennsylvania action transferred from North Carolina.  A38 (¶ 17), A102 (¶ 4), A154-56 (¶¶ 24, 30-32).  BB&T thus undoubtedly knew that Maxim did not intend to dismiss its claims for patent infringement against BB&T "with prejudice."  In fact, BB&T never indicated in any of its correspondence that BB&T would not meet with Maxim or that it would interpose a new objection to the Pennsylvania action unless Maxim agreed to grant BB&T a *res judicata* defense.  *See* A155 (¶ 30).  Perhaps this was BB&T's undisclosed intent all along, but it does not convert a clerical error in preparing dismissal papers into a substantive agreement to bar Maxim's claims.

***Third***, BB&T's lengthy recitation of the parties' purported "agreement" is entirely irrelevant to issues presented on appeal.  The parties never discussed preparation of a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and undeniably did not contemplate or file "a stipulation of

13

dismissal signed by all parties who have appeared." In fact, the rule pertaining to such stipulations appears nowhere in BB&T's brief, and BB&T did not sign the dismissal papers filed by Maxim. A41-44. BB&T had not even made an appearance when Maxim filed the dismissal papers. A9. Indeed, BB&T admits: "Maxim could have dismissed the Texas action without prejudice without even consulting BB&T because BB&T had not answered or otherwise responded in the Texas action." Blue Br. at 11. As Maxim alone filed the dismissal, BB&T's intent or understanding has no bearing.

Consequently, BB&T's assertion that the district court gave no indication that, at the time of the July 16 order, it had "specifically intended to disregard *the parties'* request for a dismissal 'with prejudice'" is a *non sequitur*. Blue Br. at 14 (emphasis added). So, too, is the statement that the district court "did not deny that, pursuant to Rule 41(a)(1), the plaintiff may choose, and *the parties* may stipulate that a voluntary dismissal will be 'with prejudice.'" *Id.* (emphasis added). The district court could not have inferred anything about any request, stipulation, or intent of "the parties" because "the parties" did not file a stipulation of dismissal. Instead, Maxim filed a voluntary notice of dismissal on its own, and it was Maxim's clerical error that led to the inadvertent dismissal language. Moreover, the district court expressly rejected the premise that BB&T assumes, namely, that BB&T's intent matters. The district court stated:

14

> While the parties went to great lengths to advise the court of their respective positions, in the end, it is the court's intent that is at issue. In this case, the logical intent of the court was to dismiss the case without prejudice.

A4. The district court correctly recognized that Maxim filed the notice of voluntary dismissal, and that it was the intent of the court—not BB&T—that mattered here.

### C.   BB&T Has Pleaded, Not Proven, a *Res Judicata* Defense.

BB&T states that it "is being forced to proceed with discovery and claim construction in the MDL action during the pendency of this appeal, when those proceedings should be barred by *res judicata*." Blue Br. at 15 n.6. BB&T has not been forced to do anything. The Pennsylvania action is the declaratory judgment action that ***BB&T brought*** in North Carolina, and which it ***did not oppose*** being consolidated with the MDL proceedings in Pennsylvania. A288-94 (docket sheet showing complaint filed by BB&T), A165-66 ("BB&T does not oppose transfer . . . ." (emphasis in original)). BB&T raised a *res judicata* defense in response to Maxim's counterclaims in that action after Maxim filed erroneous dismissal papers in the Eastern District of Texas action. A68. Before then, the subject of *res judicata* never came up. Furthermore, BB&T has not demonstrated that it is entitled to a *res judicata* defense. At this stage, it has pleaded one, not proven it. BB&T has never moved to dismiss Maxim's counterclaims or sought summary judgment on the basis of a *res judicata* defense. A335-39. Moreover,

15

BB&T would not be entitled to a *res judicata* defense whether or not the district court's correction of the dismissal order is disturbed. As the Texas action was dismissed prior to BB&T filing an answer, Maxim's claims were never litigated in that forum. *Id.* Accordingly, BB&T has not established any *res judicata* defense imperiled by the district court's May 23, 2013 order, and its assertion of prejudice confuses right with desire.

## SUMMARY OF ARGUMENT

BB&T's appeal rests on the premise that Maxim settled a multi-patent, multi-venue patent case, unilaterally, by accident, and for free—and did so before BB&T had even filed its answer. The district court rejected this account, holding that "no chain of legal reasoning" could support it. A4. BB&T now asks this Court to hold that the district court acted beyond its authority by correcting a mistakenly worded dismissal whose intended purpose was clear, and refusing to place its imprimatur on a windfall to which BB&T was never entitled. The district court acted within its authority under Rule 60 and did not abuse its discretion. This Court should affirm.

Maxim's counsel made a mechanical drafting mistake—a clerical error— that the district court picked up and incorporated into an order dismissing Maxim's claims against BB&T. Acknowledging that a clerical error had occurred and that it had not intended to dismiss Maxim's claims with prejudice, the district court

properly corrected the order pursuant to Federal Rule of Civil Procedure 60(a).

BB&T does not argue that the district court abused its discretion in amending the

order. Rather, BB&T argues that the district court acted without authority because

Maxim intended to dismiss its claims "with prejudice."

The language in Maxim's moving papers confirms that Maxim intended no

such thing, but rather intended to dismiss its claims in the Texas action "without

prejudice" "***in favor of its counterclaims*** filed [earlier that day] in *Branch Banking*

*and Trust Company v. Maxim Integrated Products, Inc.*, Case No. 2:12-cv-00945-

NBF (W.D. Pa.)." A41 (emphasis added). The district court expressly stated that

"the logical intent of the court was to dismiss the case without prejudice." A4.

There is no other way to interpret the Notice's language. As the district court said,

"[n]o chain of legal reasoning could possibly lead a court to conclude that this

voluntary dismissal in favor of counterclaims already filed in another court should

be with prejudice." A4. Thus, the "with prejudice" language in the dismissal

constituted a clerical error "because the thing spoken, written or recorded is not

what the person intended to speak, write or record." *Allied Materials Corp. v.*

*Superior Prods. Co., Inc.*, 620 F.2d 224, 225-26 (10th Cir. 1980); *Rivera*, 647 F.3d

at 193-94 (mechanical mistake "of recitation" correctable under Rule 60(a)). It is

settled law that district courts in the Fifth Circuit are authorized to correct such

errors under Rule 60(a).

BB&T raises a host of reasons why it controls the district court's straightforward application of Rule 60(a) was not authorized, but all of these reasons fail. *First*, BB&T argues that the mistake in the district court's original dismissal order was not clerical in nature, but a substantive mistake of law. BB&T is wrong. The district court found that both the court and Maxim intended to dismiss the action without prejudice.

*Second*, BB&T argues that the corrected order is not consistent with the district court's intent at the time the original judgment was entered. But this argument is directly contradicted by the district court's own emphatic statement that it intended to dismiss the action without prejudice. A4. Controlling precedent holds that "[a] judge's own subsequent statements of his intent are reliable evidence in the Rule 60(a) context." *Rivera*, 647 F.3d at 197 (citation and quotation marks omitted). BB&T provides no compelling evidence that the district court misstated its own intent.

*Third*, BB&T argues that the amendment is improper because it affects BB&T's substantive rights, but BB&T's argument is circular, as the "substantive right" that BB&T claims is affected by the order (a *res judicata* defense) is unproven. BB&T's argument is only possible because of the clerical mistake that the district court's amendment corrects.

*Finally*, BB&T argues that the court's correction under Rule 60(a) is an improper attempt to circumvent the limits of Rules 59(e) and 60(b)(1).  But BB&T's argument ignores the independent nature of the relief permitted by these different sections, as recognized by controlling precedent.

Even if the district court were not authorized to correct the typographical error in the dismissal order under Rule 60(a), the district court's order alternatively should be affirmed under Rule 60(b).  *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("[I]n reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'") (citation omitted).  Here, where it was clear to both parties that Maxim intended to proceed on its patent infringement claims in the Pennsylvania action, and BB&T indicated that it did not oppose going forward in that action, this Court should grant relief under Rule 60(b), if necessary, to prevent the manifest injustice of permitting BB&T maintain the *res judicata* defense it has pleaded.  *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013) (vacatur of dismissal under Rule 60(b) to avoid "manifest injustice" not abuse of discretion because "it would have been unfair to permit [defendant] to . . . renege on its agreement because of the procedural path taken.").

## ARGUMENT

### I.    Standard of Review.

This Court applies the law of the regional circuit in reviewing rulings made under Federal Rule of Civil Procedure 60, when they are procedural in nature and not unique to patent law. *Hildebrand v. Steck Mfg. Co., Inc.*, 333 Fed. Appx. 507 (Fed. Cir. 2009) ("We review the denial of post-trial motions by applying the law of the appropriate regional circuit."; denying appeal because appellant "fail[ed] to establish that the district court abused its discretion in denying his motion for relief from clerical error under Rule 60(a)); *see also Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1292-93 (Fed. Cir. 2013) ("When reviewing a ruling under Rule 60(b), we generally defer to the law of the regional circuit in which the district court sits . . . because that rule is procedural in nature and not unique to patent law. . . . We do not accord such deference, however, when a district court's ruling under Rule 60(b) turns on substantive issues unique to patent law.").

Under Fifth Circuit law, a district court's decision to enter a corrected judgment under 60(a) is reviewed "for abuse of discretion." *Rivera*, 647 F.3d at 193. The determination that Rule 60(a) authorizes correction, as opposed to Rule 59(e) or Rule 60(b), is a question of law that is reviewed *de novo*. *Id*. Because BB&T does not argue that the district court abused its discretion in correcting the

20

dismissal order under Rule 60(a), the issue on appeal is whether Rule 60(a) authorized the correction.

Alternatively, the district court's decision "must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'" *Chenery*, 318 U.S. at 88 (citation omitted); *Am. Family Life Assur. Co. v. Blue Br. Cross of Fla., Inc.*, 486 F.2d 225, 228 (5th Cir. 1973) ("[A] judgment which is correct in ultimate effect will not be disturbed on appeal even if the lower court relied on the wrong ground or gave an untenable reason for its decision."); *In re Am. Precision Vibrator Co.*, 863 F.2d 428 (5th Cir. 1989) (correcting district court order after determining that remanding for a Rule 60(b) motion for the district court to make the correction was unnecessary).

## II. The District Court Properly Determined that Rule 60(a) Authorized it to Correct a Clerical Mistake in the Dismissal Order.

Contrary to BB&T's narrative seeking a unilateral, accidental, and free settlement of the underlying case before any litigation, the district court in this case properly amended the order dismissing the case because the original order did not comport with the district court's intent to dismiss the action ***without prejudice***. A4 ("the logical intent of the court was to dismiss the case without prejudice"). The district court's correction was both authorized by Rule 60(a) and did not abuse the court's discretion, and should be affirmed.

21

The denomination "with prejudice" or "without prejudice" in a judgment, order or other part of the record can be changed pursuant to Federal Rule of Civil Procedure 60(a) "when the change comports with the intent conveyed by the substance of the district court's adjudication." *Rivera*, 647 F.3d at 197 (citations omitted). This straightforward statement of the law resolves this appeal. The district court made clear that it was correcting the order to reflect "the logical intent of the court . . . to dismiss the case without prejudice." A4.

In the Fifth Circuit, courts consider three criteria for whether a mistake can be corrected under Rule 60(a): (1) the nature of the mistake; (2) the district court's intent in entering the original judgment; and (3) the effect of the correction on the parties' substantive rights. *Rivera*, 647 F.3d at 193. These three criteria substantially overlap, and constitute only slightly different ways of expressing the core idea that a correction under Rule 60(a) is appropriate when "the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated." *Id.* (citations omitted). In other words, Federal Rule of Civil Procedure 60(a) permits correction of judgment or order that is in error "because the thing spoken, written or recorded is not what the person intended to speak, write or record." *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224, 225-26 (10th Cir. 1980); *see also Rivera*, 647 F.3d at 194 (Rule 60(a) correction appropriate to make judgment "speak the truth"). Here, the thing

written (dismissal "with prejudice") did not accurately reflect what the Court intended to write (dismissal "without prejudice"). This is because the district court used an erroneously drafted form submitted by Maxim, although neither Maxim nor the district court intended dismissal with prejudice. Consequently, in this case, the Fifth Circuit's three criteria all support correction under Rule 60(a).

### A. The Mistake was Clerical in Nature.

The nature of the mistake at issue here is the type of mindless or mechanical error that can be corrected under Rule 60(a). In other words, the mistake was a clerical error, which Rule 60(a) permits courts to correct. *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187 (Fed. Cir. 2009) ("Courts enjoy broad discretion to correct clerical errors in previously issued orders in order to conform the record to the intentions of the court and the parties."). Rule 60(a) not only applies to clerical errors committed by the clerk, the court, or other court personnel, it is also available to correct mistakes of parties. *Warner v. City of Bay St. Louis*, 526 F.2d 1211, 1212 (5th Cir.1976) (mistakes correctable under Rule 60(a) are "not necessarily made by the clerk"); *Pattiz v. Schwartz*, 386 F.2d 300, 303 (8th Cir.1968) (mistakes by parties correctable under Rule 60(a)).

The record confirms that Maxim always intended to go forward with its co-pending counterclaims in the declaratory judgment action now pending in Pennsylvania. Maxim's contemporaneous correspondence made it clear that its

intent was for that matter, then pending in North Carolina, to be transferred by the
JPML to permit it to go forward as part of the MDL consolidation in Pennsylvania.
A113. Consistent with this, the notice filed by Maxim clearly stated that Maxim
was dismissing the Texas action "in favor of its counterclaims" filed that same day
in the Pennsylvania action. A41. The record also shows that the "with prejudice"
language in the notice and proposed order was inadvertently included because
Maxim's attorney started with forms of dismissal that included the words "with
prejudice." A156 (¶ 34). While the language expressing the intent to proceed on
the claims in the co-pending matter was added to the forms, inadvertently the "with
prejudice" language was never changed to "without prejudice" to comport with
that intent. *Id.*, *see* A149. That mistake, however, was an error of drafting and not
an intentional choice on Maxim's part.

The district court agreed, finding that "[i]n reviewing the Plaintiff's notice of
voluntary dismissal, it is clear that the dismissal of the instant action was premised
upon the acknowledgment that the counterclaims mirroring the instant claims were
already filed in the Pennsylvania action." A4. Indeed, the district court went
further, finding that "[b]ased on the language contained in the notice of voluntary
dismissal, it is apparent that the dismissal should have been ***without*** prejudice." *Id.*
(emphasis in original). Both parties understood that Maxim intended to proceed on
its patent infringement counterclaims in the Pennsylvania Action. A104 at ¶ 9-12;

A116 ("We agree that all future motions will be made in the EDNC action which is subject to the MDL transfer order to the WDPA"); A121 (Notice of Voluntary Dismissal forwarded to BB&T with language indicating claims were being dismissed in favor of the counterclaims filed in related Pennsylvania action); *see also* A113 ("BB&T has no objection to the pending E.D. North Carolina action being transferred by the JPML to the W.D. PA.").

The fact that going forward on claims in the Pennsylvania action was always Maxim's intent demonstrates that the "with prejudice" language was not intended, and was merely a mechanical mistake. In other words, inadvertently including the "with prejudice" language was the very type of clerical mistake that Rule 60(a) permits courts to correct. *See In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 504-05 (5th Cir. 1994) ("As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed."); *Rivera*, 647 F.3d at 194 (record may be corrected to "speak the truth"). Because the district court in this case did nothing more than correct a clerical error in the dismissal order to reflect its intent to dismiss Maxim's complaint without prejudice (consistent with the language in the notice indicating Maxim intended to proceed on its infringement counterclaims in the Pennsylvania action), the district court's amendment should be affirmed.

25

### B.     The District Court Intended to Dismiss the Case Without
###        Prejudice.

As discussed above, it is the district court's intent that matters in

determining the propriety of a Rule 60(a), and the district court could not have

been clearer about its intent to dismiss the case *without prejudice*:

> While the parties went to great lengths to advise the court of their respective
> positions, in the end, it is the court's intent that is at issue. ***In this case, the***
> ***logical intent of the court was to dismiss the case <u>without</u> prejudice***.

A4 (emphasis added).  In the face of the district court's clear statement of its own

intent, BB&T resorts to questioning the district court's motive for correcting the

dismissal, arguing that the district court resorted to "hindsight" because it "sought

to change the judgment."  Blue Br. at 33-34.  In other words, BB&T's argument

rests on the premise that the district court did not accurately state its intent in its

order.  But the district court had no reason to misstate its intent, and BB&T

provides no reason why the district court would do so.  To the contrary, "[a]

judge's own subsequent statements of his intent are reliable evidence in the Rule

60(a) context." *Rivera*, 647 F.3d at 197 (citation and quotation marks omitted).

The simple truth is that the district court reliably explained its own intent, and

BB&T did not like that explanation because it did not comport with BB&T's narrative.[4]

As much as BB&T would like to make this case about something else, the dismissal papers are the only relevant documents for determining the district court's or Maxim's intent. It is undisputed that Maxim did not file a stipulated dismissal pursuant to Rule 41(a)(1)(A)(ii), because a stipulation by its very nature must be signed by more than one party, and a stipulated dismissal must be signed by all parties who have appeared. Maxim's dismissal papers are signed only by Maxim. A41; *see Mission Essential Pers., LLC v. United States,* 104 Fed. Cl. 170, 176 (Ct. Fed. Cl. 2012) (plaintiff could not dismiss case under Rule 41(a)(1)(A)(ii) "because the parties have not signed a stipulation of dismissal"). BB&T also does not contend that Maxim filed a stipulated dismissal under Rule 41(a)(1)(A)(ii). Thus, it is only the court's intent—and by extension Maxim's—that are relevant to the instant appeal. BB&T spends considerable ink discussing the parties' discussions and correspondence, but none of it matters because neither BB&T's intent nor its desires are relevant. *See* A4.

---

[4]        BB&T attempts to make much of the district court's use of the word "logical" in describing its intent. *See* Blue Br. at 33-34. But the district court used the adjective "logical" to describe its "intent" as "reasonable or necessary because of the facts," not as a *post hoc* justification for some intent different from the court's actual intent at the time of the dismissal. BB&T has shown no evidence to the contrary.

Even if the parties' pre-filing correspondence were relevant, it would not change the result. Maxim never stated an intention to dismiss its claims for infringement against BB&T with prejudice, and it would make no sense for Maxim to have done so. Maxim repeatedly communicated to BB&T that it was dismissing its claims against BB&T pending in the Texas action in favor of its counterclaims in the suit that BB&T had initiated in North Carolina, which would be consolidated with the MDL proceedings in Pennsylvania. *See* A113-14. BB&T itself indicated on numerous occasions that "BB&T has no objection to the pending E.D. North Carolina action being transferred by the JPML to the W.D. PA." A113; A116 ("We agree that all future motions will be made in the EDNC action which is subject to the MDL transfer order to the WDPA"); A165-66 ("BB&T does not oppose transfer. . . to the Western District of Pennsylvania for consolidation and coordination of pretrial proceedings before Judge Nora Barry Fischer." (emphasis in original)).

At most, the record reflects BB&T's attempts to goad Maxim into an inadvertent dismissal with prejudice in an attempt to secure a free settlement, but that is not what Maxim ever intended to seek or write. A154 (¶¶ 23-24); A38-39 (¶ 19). As explained by Maxim's counsel, in drafting the dismissal papers, he inadvertently started with forms that included the words "with prejudice" and unintentionally failed to add the three letters "out" to the word "with." A156-57 (¶

34); *see* A149.  The mistake is regrettable given the amount of unnecessary litigation that has ensued; nevertheless, as the district court found, Maxim's intention to dismiss without prejudice is indisputable given that it premised dismissal on going forward with its pending counterclaims against BB&T for infringement of the same patents in its dismissal papers.  A41.  On these facts, BB&T has not shown that the district court erred—either as a matter of law or of discretion—in correcting its order of dismissal.

BB&T argues that *Rivera* demonstrates that the scope of Rule 60(a) is narrow and allegedly inappropriate in this case.  *See* Blue Br. at 28-30.  Not so. *Rivera* actually **supports** the district court's correction in this case.  BB&T attempts to distinguish the change in prejudicial denomination in *Rivera* from the instant case because *Rivera* involved a summary judgment decision, which is always with prejudice, whereas voluntary dismissals can be either with or without prejudice.  *Id*. at 28-29.  The language that BB&T quotes from *Rivera*, however, shows precisely why that case permits the district court's Rule 60(a) correction in this case.  In particular, *Riviera* authorizes correction under Rule 60(a) when the correction "does not require the exercise of judgment" and "requires nothing more than the court's recognition that it previously made an error of recitation."  Blue Br. at 29 citing *Rivera*, 647 F.3d at 195.  That is exactly what happened here.

In this case, the district court intended to order dismissal without prejudice to give effect to the language of the filed notice that the action was being dismissed in favor of the counterclaims filed the same day in the Pennsylvania action. Specifically, the district court noted that the language in the notice made it clear the dismissal was premised on proceeding in the Pennsylvania action, that "the logical intent of the court was to dismiss the case without prejudice," and that "[n]o chain of legal reasoning could possibly lead a court to conclude that this voluntary dismissal in favor of counterclaims already filed in another court should be with prejudice." A4. Just as in *Rivera*, the district court's correction here did "not require the exercise of judgment" and "require[d] nothing more than the court's recognition that it previously made an error of recitation." *See Rivera*, 647 F.3d at 195.

Several other cases BB&T relies on also support Maxim's position. In *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224 (10th Cir. 1980), the Tenth Circuit held that Rule 60(a) permits correction of a judgment or order that is in error "because the thing spoken, written or recorded is not what the person intended to speak, write or record." *Id.* at 225-26; *see also McNickle v. Bankers Life & Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989) (reversing denial of Rule 60(a) motion requesting correction of judgment to insert omitted particulars of prejudgment interest award consistent with the district court's intent); *Dura-*

30

*Wood Treating Co. v. Century Forest Indus., Inc.*, 694 F.2d 112, 114 (5th Cir. 1982)

("[I]t matters not whether the magistrate committed it [the mistake]—as by

mistakenly drafting his own judgment—or whether his clerk did so; the law does

not regard such trifles. In such instances, the judgment can be corrected to speak

the truth.") (internal citation omitted); *W. Tex. Mktg. Corp.*, 12 F.3d at 503-504

("A mistake correctable under Rule 60(a) need not be committed by the clerk or

the court and Rule 60(a) is even available to correct mistakes by the parties."). In

this case, the district court unequivocally stated that it intended to dismiss Maxim's

case without prejudice, and so BB&T's cited cases support the district court's

correction here.

 The fact that the error in the original order stems from erroneous language

inadvertently included in the forms Maxim filed is irrelevant, because it is clear

from the face of those forms that the words "with prejudice" were not what Maxim

intended to write. As the district court stated, it was always clear that Maxim

intended to proceed with its counterclaims of infringement on the merits in the

Pennsylvania action. The district court's Rule 60(a) order expressly and correctly

recognized the error in observing that "with prejudice" was not and could not have

been what Maxim intended. A4; *see W. Tex. Mktg. Corp.*, 12 F.3d at 503-504

(mistakes of parties correctable under Rule 60(a)).

31

Other cases BB&T cites are inapposite. For example, BB&T cites *Bowen Inv., Inc. v. Carneiro Donuts, Inc.*, to support its contention that Rule 60(a) cannot be used to correct the deliberate choice of a judge. *See* Blue Br. at 25 (citing 490 F.3d 27, 29 (1st Cir. 2007)). The district court in *Bowen* denied plaintiffs' motion because it determined that the plaintiffs had intentionally omitted a defendant they later sought to hold jointly and severally liable. *Bowen*, 490 F.3d at 29-30. But that is not what happened here. The language of the order corrected under Rule 60(a) in this case did ***not*** reflect the intention of the district court (or Maxim) that the case be dismissed without prejudice. A4. The error corrected by the district court in this case was precisely the type for which the *Bowen* court would permit correction under Rule 60(a).

BB&T cites *Burton v. Johnson* for the proposition that a district court may not "clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." Blue Br. at 21 (citing 975 F.2d 690, 694 (10th Cir. 1992)). The Tenth Circuit, however, made this statement in describing its mandate to the district court to clarify an ambiguous writ of *habeas corpus*. The issue was not, as it is here, whether the district court exceeded its authority to correct an order under Rule 60(a), and thus *Burton* contains no applicable analysis concerning the issue presented by this appeal. Here, the district court's unambiguous statement that it intended at the time of the

32

original order to dismiss the Texas action without prejudice both "clearly reflects [the district court's] contemporaneous intent" and is "reliable evidence in the Rule 60(a) context." *Burton*, 975 F.2d at 694; *Rivera*, 647 F.3d at 197 (citations omitted); A4.

### C. The District Court's Correction Did Not Affect Any Substantive Rights of BB&T.

The district court's correction of the order to reflect its and Maxim's intent did not affect any substantive rights of the parties. Contrary to BB&T's arguments, BB&T had no rights to protect. As BB&T concedes, Maxim had the right to dismiss the case unilaterally, without any approval or input from BB&T, because BB&T had not filed any answer or any substantive paper at the time of the dismissal. *See* Blue Br. at 11 ("Maxim could have dismissed the Texas action without prejudice without even consulting BB&T because BB&T had not answered or otherwise responded in the Texas action."). That is exactly what happened. Maxim filed a unilateral paper seeking dismissal, which required no approval or signature from BB&T.

Although BB&T spends much of its brief trying to paint a picture of an agreement between the parties, BB&T does not dispute that the parties did not choose to file a stipulation to dismiss the case under Rule 41(a)(1)(A)(ii), as they could have done. Indeed, that stipulation rule appears nowhere in BB&T's brief, and nowhere in the record did BB&T even suggest that the parties should file such

33

a stipulation to dismiss the case.  Most importantly, there was no stipulation signed by both parties or any paper "signed by all parties who have appeared," as required by the rule.  Fed. R. Civ. P. 41(a)(1)(A)(ii).  BB&T's stated intent is irrelevant.

BB&T had no "right" to a dismissal with prejudice.  BB&T cites no authority or anything in the record that would give it such a right.  There was no litigation on the merits.  BB&T filed no answer or other response, as BB&T itself admits, and had not even made an appearance in the case.  Blue Br. at 11; A9.  Although BB&T contends it now has a *res judicata* defense, that defense is speculative at best.  BB&T has pleaded the defense (A309), but has not established that it has any substantive *res judicata* rights.  Indeed, BB&T has never brought a motion to dismiss or moved for summary judgment based on *res judicata*, and no court has ever ruled on that defense.  *See* A288-302 (docket sheet).

In fact, Maxim disputes that BB&T would have a *res judicata* defense, even if the district court had not amended its order, because there had been no litigation on the merits and no substantive adjudication on the parties' claims or rights.  "[W]here doubt exists regarding the finality of a prior order of dismissal, the court may look beyond the words 'with prejudice' to determine if the dismissal was meant to be conclusive."  *Brye v. Brakebush*, 32 F.3d 1179, 1184-85 (7th Cir. 1994); *Md. v. Baltimore Transit Co.*, 38 F.R.D. 340 (D. Md. 1965) ("A voluntary dismissal under Rule 41(a)(2) on the condition that it be 'with prejudice' does not

34

necessarily constitute an adjudication on the merits. . . . [T]he court may look

behind the words 'with prejudice' to determine if the dismissal was meant to be

conclusive."), *citing Pueblo De Taos v. Archuleta*, 64 F.2d 807 (10th Cir. 1933).

Here, given the fact that the notice of dismissal expressly stated that the dismissal

was "in favor of [Maxim's] counterclaims" filed earlier that day in the related

Pennsylvania action (A41), there is certainly sufficient "doubt . . . regarding the

finality of [the] order of dismissal" such that "the court may look beyond the words

'with prejudice' to determine if the dismissal was meant to be conclusive." *Brye*,

32 F.3d at 1184-85.

Indeed, BB&T's alleged "substantive right" argument assumes its own

conclusion.  Specifically, by starting from the premise that the district court took

away a *res judicata* defense, BB&T necessarily assumes that district court made a

substantive change to the dismissal rather than correction of a clerical error—the

very issue presented on appeal here.  BB&T would unquestionably have no such

right unless the district court, contrary to its express statements, made a substantive

correction.  Both the record, and the district court's own statements, however,

undercut the premise for BB&T's argument because, according to the district court,

both Maxim and the district court intended a dismissal without prejudice that

would permit the claims in the Pennsylvania action to go forward.  A4.

BB&T's contention that it is prejudiced by "being forced to proceed with discovery and claim construction" in the MDL proceedings is also a red herring. *See* Blue Br. at 15 n. 6.  As discussed above, BB&T brought and voluntarily withdrew its opposition to the transfer of the North Carolina action that has been transferred to Pennsylvania as part of the MDL proceedings, and that transfer occurred before the parties even spoke about dismissing the Texas action.  *See* A165-67 ("BB&T does not oppose transfer . . . to the Western District of Pennsylvania for consolidation and coordination of pretrial proceedings before Judge Nora Barry Fischer." (emphasis in original)).[5]

Furthermore, the original notice of dismissal expressly reserved the opportunity to pursue the North Carolina action.  A41 (claims dismissed "in favor of [Maxim's] counterclaims" filed earlier the same day in the related Pennsylvania action).  The Fifth Circuit has specifically held:  "Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier . . . proceeding." *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 553 (5th Cir. 2011) *quoting Browning v. Levy*, 283 F.3d 761, 774 (6th Cir.2002); *King v. Provident Life & Accident Ins.*

---

[5]      Regardless of the outcome of this appeal, Maxim does not concede that BB&T's *res judicata* defense would have any merit both because (1) BB&T is not entitled to a *res judicata* defense, as discussed above, and (2) *res judicata* would not bar a claim for patent infringement based on infringing acts committed after the prior dismissal.  *See* A335-36 (citing *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012)).

*Co.*, 23 F.3d 926 (5th Cir.1994) ("A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion.") *quoting* 18 Charles A. Wright et al., Federal Practice & Procedure § 4413 (1981). Here, because there is no question that the original notice of dismissal expressly reserved the claims in the related Pennsylvania case, "[r]es judicata does not apply." *Tex. Wyo. Drilling*, 647 F.3d at 553.

BB&T cites *Maxus Energy Corp. & Subsidiaries v. United States*, 31 F.3d 1135 (Fed. Cir. 1994), and *Pfizer Inc. v. Uprichard*, 422 F.3d 124 (3rd Cir. 2005), in support of its circular argument that the district court affected a substantive right. Neither case supports BB&T's argument. *See* Blue Br. at 34-36.

*Maxus Energy* presents the opposite situation to the case at bar: an original dismissal without prejudice amended to a dismissal with prejudice. The change was held to be substantive because it affected the plaintiff's claims, not a purported affirmative defense pleaded by the defendant. In *Maxus Energy*, the Court of Federal Claims acted on a stipulation to dismiss all claims except one with prejudice. *Id.* at 1138. The court's dismissal order, however, did not specify whether dismissal was with prejudice or without. *Id.* at 1138-39. The parties, a taxpayer and the government, subsequently filed a joint motion to amend the dismissal to conform it to the stipulation, which the district court granted,

dismissing all claims with prejudice except for one. *Id.* at 1139. The government argued that the motion to amend the dismissal was made under an analogue to Rule 60(a) such that the taxpayer's appeal was untimely, and the taxpayer argued that the amendment was made pursuant to an analogue to Rule 59(d), which would make its appeal timely. *Id.* On appeal, this Court held that the original dismissal was without prejudice because it was a voluntary dismissal under Rule 41(a)(2). Since the motion to amend converted the dismissal without prejudice to one with prejudice for all claims except one, it affected the taxpayer's substantive rights, and was considered to have been made under Rule 59(d), not Rule 60(a). Because the present case does not involve a dismissal "without prejudice" that was later changed to a dismissal "with prejudice" contrary to the language of a stipulation, *Maxus Energy* is not applicable here.

In *Pfizer*, a former employee obtained an arbitration award against her former employer, which the district court confirmed in an order. *Id.* at 126. The district court's order, however, did not include an amount of prejudgment interest subsequently stipulated by the parties. *Id.* at 127. The former employer refused to pay the arbitration award unless the former employee executed a settlement agreement, and declining to do so, the former employee returned to the district court seeking amendment of the confirmation order to include the prejudgment interest. *Id.* at 127-28. The district court corrected the order, but only on condition

38

that the former employee sign the settlement agreement.  *Id.* at 128.  The Third

Circuit held that the district court erred by requiring the former employee to sign a

settlement agreement in the context of a Rule 60(a) motion because the settlement

agreement changed the substantive rights of the parties.  *Id.* at 130.  In the present

case, the district court did not require execution of a settlement agreement as a

prerequisite to amending the dismissal order to reflect its original intent.  *Pfizer* is

not applicable or analogous here.  Consequently, contrary to BB&T's arguments,

neither *Maxus Energy* nor *Pfizer* demonstrate that the district court's Rule 60(a)

correction affected any substantive right of BB&T.

Accordingly, because the three criteria considered by the Fifth Circuit to

determine whether a mistake can be corrected under Rule 60(a) all weigh in favor

of correction—even considering the cases cited by BB&T—the district court's

correction should be affirmed and the Amended Order of Dismissal (A6) should

stand.  *Rivera*, 647 F.3d at 193.

### D. The District Court's Correction of the Dismissal Error is Reviewed for an Abuse of Discretion.

Under applicable Fifth Circuit precedent, a decision to correct an order

under Rule 60(a) is reviewed for abuse of discretion.  *Rivera*, 647 F.3d at 193.

BB&T does not contend on appeal that the district court abused its discretion,

instead limiting its brief to arguments that the district court exceeded its authority

in applying Rule 60(a) to correct the order at issue.  *See* Blue Br. at 20 *et seq.*

Hence, if this Court finds that the district court did not exceed its authority, the inquiry is at an end.

Nonetheless, if this Court decides to consider the argument not raised by BB&T—namely, that the district court abused its discretion in correcting the order—there is ample evidence that the district court did not abuse its discretion. Indeed, it was an eminently reasonable exercise of discretion to change the dismissal order so that it comported with the court's stated intent (as well as Maxim's intent). Maxim was dismissing one set of claims in favor of concurrently pending counterclaims alleging infringement of the same patents, and BB&T had yet to answer or even appear in the case. Correction of a clerical mistake coupled with a reasoned explanation of the district court's own intent cannot be an abuse of discretion: "the logical intent of the court was to dismiss the case without prejudice." A4; *see Rivera*, 647 F.3d at 197 (citation omitted) ("'A judge's own subsequent statements of his intent' are reliable evidence in the Rule 60(a) context.").

## III. The District Court's Order Does Not Circumvent Rules 59(e) or 60(b).

### A. Fifth Circuit Precedent Confirms that Rules 59(e) and 60(b) Provide Different, Independent Grounds for Relief.

BB&T argues that the district court's amended order is somehow an attempt to circumvent the limits of Rules 59(e) and 60(b)(1), because Rule 59(e) limits relief to motions brought within 28 days of the judgment, and because Rule

60(b)(1) permits courts to correct substantive errors only in certain circumstances.

Blue Br. at 36-40.  But BB&T's arguments ignore the framework of the Federal

Rules of Civil Procedure, which provides multiple independent grounds for relief.

Just because relief is available and sought under one ground does not indicate that

the other potential grounds for relief have been "circumvented."  Indeed, the Fifth

Circuit has expressly recognized the separate roles and differing scope of these

rules.  *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669 (5th

Cir. 1986) (noting "the separate roles of Rule 59(e), to alter and amend the

judgment, and Rule 60(a), to correct the court's clerical mistakes," as recognized

by multiple circuits, and the differing scope and time limitations of Rule 60(b)),

*cert. denied*, 479 U.S. 930 (1986).  In *Harcon Barge*, the Fifth Circuit dismissed an

appeal as premature under Federal Rule of Appellate Procedure 4(a) because

defendants in that case filed a motion seeking relief under Rule 59(e), which

nullifies the previously filed notice of appeal, but specifically noted that, unlike a

Rule 59(e) motion, a motion under 60(a) "does not void a previously filed notice of

appeal under Fed. R. App. P. 4(a)(4)."  *Id.* at 668-69.  The Fifth Circuit also

specifically noted that a motion filed under Rule 60(b) may be filed after the time

frame for a Rule 59(e) motion and not be subject to Federal Rule of Appellate

Procedure 4.  *Id*.

BB&T's argument that correction under Rule 60(a) "circumvents" Rule 59(e) is strikingly similar to an argument the Fifth Circuit rejected in *Rivera*. In *Rivera*, the plaintiff-appellant argued that changing the prejudicial denomination of an order could only be done under Rule 59(e), and that the court's correction under Rule 60(a) in response to a motion filed years after the judgment (*i.e.*, well beyond the time period specified in Rule 59(e)) was improper. *Rivera*, 647 F.3d at 195. In other words, the plaintiff-appellant was essentially arguing that the district court had circumvented Rule 59(e) by granting correction and changing the prejudicial denomination of an order under Rule 60(a). The Fifth Circuit rejected that argument, "conclud[ing] that the district court's mistake in designating a post-summary judgment dismissal as a dismissal without prejudice was clerical in nature" and "hold[ing] that the district court acted within the scope of the authority conferred by Rule 60(a) when it corrected the judgment to reflect that Rivera's claims had been dismissed with prejudice." *Id*. at 195 & 202.

BB&T also argues that *Rivera* requires all changes in the prejudicial effect of a dismissal to be made under Rule 59(e), because *Rivera* states: "Rule 59(e) is the exclusive means for changing the prejudicial effect of a voluntary dismissal granted under Rule 41(a)(2)." Blue Br. at 30. But BB&T's argument is flawed for several reasons. First, the *Rivera* court itself changed the prejudicial denomination of the judgment under Rule 60(a), and not 59(e), because as in this case, it

corrected the judgment to reflect the court's original intent.  Second, the prejudicial *effect* of the order in this case was not actually changed—it was merely corrected to what it should have been in the first place (*i.e.*, what the court originally intended).  Third, the quote from the *Rivera* decision that BB&T relies upon actually addresses a dismissal that was intended to be with prejudice, which cannot be changed under Rule 60(a).  That is not the case here, where both the Court and Maxim's intent was a dismissal without prejudice because the dismissal was premised on proceeding in the Pennsylvania action.

## B.     The Cases BB&T Cites Do Not Support BB&T's "Circumvention" Arguments.

BB&T argues that Maxim's Rule 60 motion was invalid because it was outside the time limit specified in Rule 59(e), citing *In re Galiardi* for the proposition that a district court cannot "supplement by amendment an earlier order by what is subsequently claimed to be an oversight or omission."  *See* Blue Br. at 36 (citing 745 F.2d 335, 337 (5th Cir. 1984)).  But the correction at issue in that case was impermissible under Rule 60(a) because the pleadings did not evidence the intent to transfer based on one ground (§ 1406(a)) or the other (§ 1404(a)).  *Id.* at 337.  In this case, unlike in *In re Galiardi*, Maxim's dismissal papers clearly indicated that Maxim intended to pursue its claims of infringement in the MDL proceedings.  Thus, Maxim's intent was reflected in the dismissal papers, and the

district court's Rule 60(a) correction order reflects what Maxim and the district court obviously intended but misstated due to a mechanical error.

Other cases BB&T cites likewise fail to demonstrate that the district court's order circumvented Rule 59(e) or 60(b). For example, *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395 (4th Cir. 1995), concerned a motion for reconsideration of a ruling compelling arbitration pursuant to AAA rules and procedures. *Id.* at 396-97. The Fourth Circuit held that Rule 60(b) does not authorize a motion that merely seeks reconsideration of a legal issue. *Id.* at 400-01. In this case, however, Maxim's Rule 60(a) motion did not seek reconsideration of a legal issue already adjudicated, and *CNF Constructors* says nothing about Rule 60(a). Accordingly, *CNF Constructors* does not support BB&T's argument that the district court circumvented Rules 59(e) or 60(b) in this case.

BB&T also argues that the correction made by the district court could only be made under Rule 60(b) because it affects the substantive rights of the parties. *See* Blue Br. at 34-36. This is incorrect. As discussed above in Sections II.B and II.C, the district court's amendment of the order was permissible because it simply corrected the order to reflect the district court's intent, and the *Maxus* and *Pfizer* cases BB&T relies on to support its arguments are inapplicable, as discussed above.

In addition, BB&T argues that "controlling precedent . . . foreclosed any relief under Rule 60(b)(1)," because it contends that the correction made by the

district court was based on mistakes of counsel or failures of counsel to understand the import of its actions. *See* Blue Br. at 37-38. However, BB&T's arguments are incorrect, and the cases it cites are distinguishable.

The first case BB&T cites in support of its argument that Rule 60(b) should apply is *Olle v. Henry & Wright Corp.*, which involved a bankruptcy court amendment of an order of sale to include the good will and trade name of the debtor. *See* Blue Br. at 37 (citing 910 F.2d 357, 363 (6th Cir. 1990)). The Sixth Circuit held that the exclusion of good will and trade name was not a clerical error correctable under Rule 60(a) because the district court had to hold a hearing to determine whether the trustee's report—on which the original order was based—was erroneous. *Id.* at 364. Here, the district court did not have to hold an evidentiary hearing to determine that the dismissal "with prejudice" was not Maxim's or the court's intent.

BB&T also cites *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447 (5th Cir. 2001), which BB&T contends stands for the proposition that changing the prejudicial effect of a judgment is a substantive change beyond Rule 60(a). Blue Br. at 28, 37. *Logan*, however, did not annunciate such a broad, general proposition, and does not support BB&T's arguments here. In *Logan*, the Fifth Circuit held that the district court could not correct its order dismissing patent claims under Rule 60(a), but not because correction of the dismissal would change

45

the prejudicial effect of the judgment. Rather, correction under Rule 60(a) was

improper because the district court had previously made statements about its intent

to dismiss without prejudice that contradicted its attempted correction. *Id.* at 454.

In this case, however, the district court did not make any statements contrary its

original intent to dismiss without prejudice. *See* A4. *Logan* thus is inapplicable

and provides no support for BB&T's argument.

 *Jones v. Anderson-Tully Co.*, 722 F.2d 211 (5th Cir. 1984), also does not

support BB&T's position. *Jones* involved a judgment that purportedly erred in

describing the legal boundary between two properties. *Id.* at 212. The Fifth

Circuit held that an error in the legal description of property was substantive, not

clerical. *Id.* at 212-13. As the order at issue in this appeal does not concern the

legal description of real property or any substantive change, *Jones* does not apply.

## IV. The District Court's Order May Alternatively Be Affirmed Under Rule 60(b).

 Rule 60(b) provides an alternate and independent basis for affirming the

district court's correction of the order of dismissal that may be applied here.

Maxim sought relief as an alternative under Rule 60(b), pointing specifically to

Rules 60(b)(1) and 60(b)(6). A29-32.

**A.   This Court May Affirm the District Court's Correction Under Alternative Grounds.**

A reviewing court must affirm the decision of a lower court if the result is correct, even if the reviewing court disagrees with the basis for that decision. *Chenery*, 318 U.S. at 88 (1943)  ("[I]n reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'") (citation omitted); *Helvering v. Gowran*, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.").  *See also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009) (affirming district court's judgment "for somewhat different reasons than those articulated by the district court"); *AstraZeneca Pharm. LP v. Apotex Corp.,* 669 F.3d 1370, 1377 (Fed. Cir. 2012) (affirming district court's dismissal on different grounds); *Koyo Seiko Co., Ltd. v. United States*, 95 F.3d 1094, 1102 (Fed. Cir. 1996) (recognizing ability to affirm judgment on grounds not given below); *In re Comiskey*, 554 F. 3d 967, 974 (Fed. Cir. 2009) (same; remanding case "would be wasteful") (citation omitted); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F. 2d 1530, 1540 (Fed. Cir. 1983)  ("We sit to review judgments, not opinions.").

The Fifth Circuit applies this same principle to avoid disturbing a judgment that is correct in its ultimate effect, even if the circuit court disagrees with the basis

47

for that decision.  *See Am. Family*, 486 F.2d at 228  ("In this setting we raise *sua sponte* the principle that a judgment which is correct in ultimate effect will not be disturbed on appeal even if the lower court relied on the wrong ground or gave an untenable reason for its decision."); *Am. Precision Vibrator*, 863 F.2d 428 (correcting district court order after determining that remanding for Rule 60(b) motion for district court to make correction was unnecessary).  Accordingly, this Court should affirm the district court's decision if it is correct, even if this Court does not adopt the district court's reasoning.

### B.    The District Court's Correction of the Order Would Also Be Appropriate Under Rule 60(b).

Federal Rule of Civil Procedure 60(b) "is 'a grand reservoir of equitable power to do justice in a particular case" with several mechanisms for relieving a party from a final judgment, order or proceeding.  *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) citing *Menier v. United States*, 405 F.2d 245, 248 (5th Cir. 1968).  "By its very nature, the rule seeks to strike a balance between two countervailing impulses:  the desire to preserve finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all of the facts.'"  *Seven Elves*, 635 F.2d at 401.  Accordingly, "the rule should be liberally construed in order to do substantial justice."  *Id.* (citations omitted).  "What is meant by this general statement is that, although the desideratum of finality is an important goal, the justice-function of the courts demands that it must

48

yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Id.*

One important consideration in deciding whether to grant a Rule 60(b) motion is "if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments. . . ." *Id.* at 402. In the instant case, because the case was resolved based on a dismissal before BB&T ever filed an answer and before there was any consideration of the merits, the "balance" between finality and "justice" must weigh heavily in favor of justice. Without a long history of litigation involving attendant expenditures on discovery, trial preparation and trial, the underlying rationale for desiring finality is absent here.[6]

Maxim brought its motion for correction less than two months after the order for which it sought correction, so relief was available under either Rule 60(b)(1),

---

[6] In *Seven Elves*, the Fifth Circuit set forth eight factors that should inform a court's consideration of a motion under Rule 60(b). These factors collectively weigh in favor of correcting the judgment in this case as the district court did. *See* 635 F.2d at 402. In this case, Maxim sought relief from the district court within less than two months of the order. As in *Seven Elves*, it cannot be suggested that Maxim brought a Rule 60 motion as a substitute for appeal or outside of a "reasonable time." 635 F.2d at 403 (holding that "Rule 60(b) will be liberally construed in favor of trial on the full merits of the case" and reversing denial of Rule 60(b) motion). Likewise, BB&T has no intervening equitable rights that are prejudiced by correction of the dismissal order, and no delay is likely to occur absent the correction. *Id.*

which is limited to one year from the order, or Rule 60(b)(6), which has no time limit. Indeed, because Maxim filed its motion within a reasonable time, less than one year from the issuance of the order, there is no need to differentiate between the subsections under which Maxim sought relief. *Seven Elves*, 635 F.2d at 402 n.3 ("As a practical matter . . . where the Rule 60(b) motion is brought within one year and within a 'reasonable time,' there is no need to differentiate between the grounds justifying relief under subsections (1)-(5) and those justifying relief under the residual subsection.").

BB&T relies heavily on a pair of cases involving Rule 60(b) that are distinguishable from the facts of this case, and which are contradicted by the more recent controlling *Yesh Music* case, which suggests that it would be a "manifest injustice" to allow BB&T to renege on its position that the Pennsylvania action go forward because of the procedural path taken. *Yesh Music*, 727 F.3d at 363.

BB&T relies on *In re Pettle*, in which the Fifth Circuit affirmed a bankruptcy court's decision denying a Rule 60(b) motion to change the prejudicial effect of a voluntary dismissal. *See* Blue Br. at 38-39, citing *In re Pettle*, 410 F.3d 189 (5th Cir. 2005). In *Pettle*, the court held that the dismissing party "made a specific choice to voluntarily request dismissal of his case with prejudice without fully understanding the consequences of his decision on his state court action." *Id.* at 193. The dismissing party filed his dismissal after obtaining an order

discharging all debts except those potentially owed by the other party to the state court action. *Id.* at 190-91. Because the dismissing party had made that intentional choice, the *Pettle* court held that the bankruptcy court did not abuse its discretion to deny relief under Rule 60(b). *Id.* at 193.

The instant case presents a completely distinguishable scenario from the situation before the *Pettle* court. First, unlike the dismissing party in *Pettle*, Maxim did not make the specific choice to dismiss the case with prejudice after obtaining some relief from the dismissing court, but Maxim's counsel started with forms of dismissal that included the words "with prejudice," and inadvertently failed to change the "with" in the forms to "without." A156-57 (¶ 34), A149. Second, the district court stated that its intent in granting the order dismissing the case was to dismiss the case without prejudice. A4 ("the logical intent of the court was to dismiss the case without prejudice."). Third, the record clearly shows that Maxim's undisputed intent was to go forward on the claims in the related Pennsylvania action, the opposite of the intent to dismiss with prejudice the *Pettle* court ascribed to the dismissing party in that case. A41 (dismissing claims "in favor of" counterclaims filed in related Pennsylvania action.). Fourth, Maxim obtained no substantive relief from the Eastern District of Texas. Finally, the procedural posture here is the opposite of the posture in *Pettle*: in *Pettle*, the abuse of discretion standard favored affirmance of the bankruptcy court's denial of Rule

51

60(b) relief, whereas in this case, the abuse of discretion standard favors

affirmance of the district court's correction of the dismissal.

BB&T also heavily relies on a Second Circuit case, *Nemaizer v. Baker*,

which, is inapplicable here. *See* Blue Br. at 39-40, citing *Nemaizer v. Baker*, 793

F.2d 58 (2d Cir. 1986). The parties in *Nemaizer* signed a stipulation, undoubtedly

negotiated between the parties, dismissing the case with prejudice. *Id*. at 59.

Despite BB&T's extensive arguments about the alleged negotiations and

agreement between the parties, however, there was no stipulation in this case. The

court in *Nemaizer* held that "the stipulation was not ambiguous; its legal effect

clearly precluded appellees from later raising a federal claim" and because of this,

"the judgment is not susceptible simply to being amended. . . ." *Id*. at 64. No

similar facts exist here.

Unlike *Nemaizer*, there is no stipulation—unambiguous or otherwise—in

this case. Rather, in this case, the notice of dismissal expressly indicated that

Maxim was dismissing its claims in the Eastern District of Texas "in favor of its

counterclaims" filed earlier the same day in the related Pennsylvania action. A41.

Unlike *Nemaizer*, the record indicates that the parties understood that the claims in

the Pennsylvania action would go forward, and importantly that the intent of

Maxim (the filing party) was that the Pennsylvania action would go forward. Even

more significantly, the district court in the instant case indicated that its own intent

52

was to dismiss the case *without* prejudice to give effect to the language of the notice, which indicated that the claims would go forward in Pennsylvania. A4.

*Nemaizer's* applicability has also has been limited by subsequent cases, which confirm that *Nemaizer* does not support BB&T's argument. In *Israel v. Carpenter*, for example, the Second Circuit held that *Nemaizer* does not apply where evidence shows that parties intended to proceed in another forum. *Israel v. Carpenter*, 120 F.3d 361, 365-66 (2d Cir. 1997) . As discussed above, there is ample evidence that both parties in this case understood that Maxim intended to proceed in another forum, and BB&T indicated that it did not oppose proceeding in another forum. *See* A113 ("BB&T has no objection to the pending E.D. North Carolina action being transferred by the JPML to the W.D. PA."); A165 ("BB&T does <u>not</u> oppose transfer . . . to the Western District of Pennsylvania for consolidation and coordination of pretrial proceedings before Judge Nora Barry Fischer." (emphasis in original)); A116 ("We agree that all future motions will be made in the EDNC action which is subject to the MDL transfer order to the WDPA").

Additionally, in *ISC Holding AG v. Nobel Biocare Fin.*, the Second Circuit more recently recognized that *Nemaizer* did not "institute[] a more demanding requirement for Rule 60(b)(6)" and that the "extraordinary circumstances . . . . statement in *Nemaizer*" about Rule 60(b)(6) "was dicta." *ISC Holding AG v. Nobel*

*Biocare Fin.*, 688 F.3d 98, 109 n.19 (2d Cir. 2012)).  Moreover, BB&T fails to

acknowledge the obvious fact that *Nemaizer* is a Second Circuit case that is not

controlling here.  *See Thyssen Steel Co. v. M/V Kavo Yerakas*, 50 F.3d 1349, 1353

(5th Cir. 1995) (Second Circuit cases not controlling authority in Fifth Circuit).

BB&T also cites the Tenth Circuit case *Cashner v. Freedom Stores, Inc.*, as

allegedly supporting its position that the relief Maxim sought is outside the scope

of Rule 60(b)(1).  *See* Blue Br. at 37 citing *Cashner v. Freedom Stores, Inc.*, 98

F.3d 572 (10th Cir. 1996).  Like *Nemaizer* and unlike the instant case, *Cashner*

involved a settlement agreement between the parties.  The mistake that the district

court corrected in *Cashner* was not the type of mistake that was correctable under

Rule 60(b), because it "arose in connection with negotiating the underlying

stipulation and not in connection with the subsequent enforcement of the

stipulation by the court."  *Id.* at 578.  Because there was no stipulation in the

instant case, *Cashner* is inapplicable.

More recent Fifth Circuit precedent confirms that Rule 60(b) provides a

viable and appropriate alternative to sustain the district court's amendment.  In

*Yesh Music v. Lakewood Church*, the Fifth Circuit recently affirmed a district

court's decision to vacate a dismissal under Rule 60(b)(6) to avoid the prejudicial

effect of prior dismissals because "failing to do so would cause a manifest

injustice," where the parties had previously agreed to the case proceeding in Texas.

*Yesh Music*, 727 F.3d at 363. The plaintiff in that case had voluntarily dismissed its first copyright infringement action in Texas, and filed a second copyright action involving the same claims in New York the next day. *Id*. The defendant asked the New York court to stay its action so that it could seek reimbursement of expenses incurred in the first action in Texas. *Id.* While the parties were before the Texas court on the defendant's motion for costs, the parties agreed on the record that the case should proceed in Texas. *Id.* The plaintiff then voluntarily dismissed its second copyright action in New York so the parties could proceed in Texas as agreed. Subsequently, the accused infringer argued that the dismissal of the New York action was automatically with prejudice under Rule 41(a)(1)(B) because it was a second voluntary dismissal. The plaintiff then moved to have the first dismissal of the original Texas action vacated under Rule 60(b). *Id*.

Despite agreeing that the case should proceed in Texas, the defendant opposed the Rule 60(b) motion, arguing that the Texas court did not have jurisdiction to grant the motion and, even if it did, that it would be an abuse of discretion to do so. The district court disagreed, and determined that, based on the parties' agreement, it was appropriate to vacate the dismissal of the first copyright action under Rule 60(b) "as failing to do so would cause a manifest injustice." *Id.* at 363. The Fifth Circuit held that "[t]he district court did not abuse its discretion in concluding that it would have been unfair to permit [defendant] to agree to

55

reinstatement of the case in Texas, and then allow it to renege on its agreement because of the procedural path taken." *Id*.

In this case, BB&T does not dispute that it understood the parties would proceed on the same claims in the North Carolina (now Pennsylvania) action. The record clearly shows BB&T's assent to this. A104 (¶¶ 9-12); A116 ("We agree that all future motions will be made in the EDNC action which is subject to the MDL transfer order to the WDPA"); A121 (Notice of Voluntary Dismissal forwarded to BB&T with language indicating claims were being dismissed in favor of the counterclaims filed in the related Pennsylvania action); *see also* A113 ("BB&T has no objection to the pending E.D. North Carolina action being transferred by the JPML to the W.D. PA."); A165 ("BB&T does <u>not</u> oppose transfer . . . to the Western District of Pennsylvania for consolidation and coordination of pretrial proceedings before Judge Nora Barry Fischer." (emphasis in original)). There is nothing in the record that indicates that BB&T did not intend to proceed in the Pennsylvania action. Thus, just as in *Yesh Music*, it would be a "manifest injustice" to allow BB&T to "renege on its agreement because of the procedural path taken." 727 F.3d at 363. Accordingly, Rule 60(b) provides a viable alternative ground for the relief the district court granted in this case.

## CONCLUSION

The district court correctly amended its order under Rule 60(a) to reflect the court's original intent that the dismissal be without prejudice.  The district court did not err—either as a matter of law or of discretion—in making the correction.  Alternatively, the district court's order can and should be affirmed under Rule 60(b).  BB&T's arguments to the contrary are unavailing.  This Court should affirm.

Respectfully Submitted,

October 18, 2013

/s/ Philip W. Marsh

Philip W. Marsh
James C. Otteson
David A. Caine
Michael D.K. Nguyen
AGILITY IP LAW, LLP
149 Commonwealth Dr.
Menlo Park, CA  94025
Telephone:  (650) 227-4800
Facsimile:   (650) 318-3483
Email:
  phil@agilityiplaw.com
  jim@agilityiplaw.com
  dacaine@agilityiplaw.com
  mnguyen@agilityiplaw.com

Matthew D. Powers
William P. Nelson
Aaron M. Nathan
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Telephone:  (650) 802-6000
Facsimile:  (650) 802-6001
Email:
  matthew.powers@tensegritylawgroup.com
  william.nelson@tensegritylawgroup.com
  aaron.nathan@tensegritylawgroup.com

*Attorneys for Plaintiff-Appellee*
*Maxim Integrated Products, Inc.*

# United States Court of Appeals
## for the Federal Circuit

*MAXIM INTEGRATED PRODUCTS v BRANCH BANKING AND TRUST CO.*,
2013-1495

### CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by AGILITY IP LAW, LLP, Attorneys for Appellee to print this document.  I am an employee of Counsel Press.

On **October 18, 2013**, Counsel for Appellee has authorized me to electronically file the foregoing **Brief for Plaintiff-Appellee** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> Douglas Hallward-Driemeier
> Henry Huang
> James Myers
> Ropes & Gray LLP
> 700 12th Street, NW
> One Metro Center - Suite 900
> Washington, DC 20005
> 202-508-4600
> douglas.hallward-driemeier@ropesgray.com
> henry.huang@ropesgray.com
> james.myers@ropesgray.com

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

October 18, 2013                                  /s/ Elissa Matias
                                                   Counsel Press

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

  X   The brief contains <u>13,845</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ,or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using <u>MS Word for Mac 2011 and Word 2010</u> in a <u>14</u> point <u>Times New Roman</u> font or

_____ The brief has been prepared in a monospaced typeface using _____ _____ in a ___ characters per inch_____ font.

<u>October 18, 2013</u>                <u>/s/ Philip W. Marsh</u>
Date                            Philip W. Marsh
                                *Counsel for Appellee*
                                *Maxim Integrated Products, Inc*